**Shoukry QADDURA, Issam Qaddura, and Indo European Foods, Inc., a Texas Corporation, Appellants,**

v.

**INDO–EUROPEAN FOODS, INC., a California Corporation, Appellee.**

No. 05–03–01054–CV.

Court of Appeals of Texas, Dallas.

Aug. 30, 2004.

repeatedly states she has no knowledge or understanding of any corporate relationships or entities involved.

Donald T. Fulton, Fort Worth, for Appellant.

Robert R. Ries, Plano, for Appellee.

Before Justices MOSELEY, BRIDGES, and LANG–MIERS.

## OPINION

Opinion By Justice MOSELEY.

Indo–European Foods, Inc., a California corporation ("Indo–California"), sued Indo European Foods, Inc., a Texas corporation, Shoukry Qaddura, and Issam Qaddura (collectively "Indo–Texas"), and Jamal Qaddura for breach of a settlement agreement. After a bench trial, the district court rendered judgment in favor of Indo–California, granting a permanent injunction and awarding damages and attorney's fees. Indo–Texas appeals, contending in seven issues that: (1) the evidence is insufficient to support the amount of damages awarded; (2) the injunction is void and should be dissolved; (3) the evidence is insufficient to support the injunctive relief granted; (4) the trial court abused its discretion in awarding attorney's fees against Indo–Texas; (5) the evidence is insufficient to support the award of attorney's fees to appellee; (6) there is no evidence of breach of the settlement agreement by Issam Qaddura; and (7) the judgment should be reformed to include a take nothing judgment as against Jamal Qaddura. We affirm the trial court's judgment.

## BACKGROUND

Indo–Texas and Jamal Qaddura entered into a settlement agreement to resolve trademark infringement claims against them by Indo–California. Indo–California later filed this suit against Indo–Texas and Jamal Quaddura alleging they had breached that settlement agreement. Indo–California requested a temporary restraining order, temporary and permanent injunctions, damages, and attorney's fees. The trial court granted a temporary restraining order.

Indo–Texas (Indo European Foods, Shoukry Qaddura and Issam Qaddura) were duly served with citations and filed timely answers. Jamal Qaddura was never served and did not appear in court. After Indo–California moved for a show cause order alleging violations of the temporary restraining order, Indo–Texas substantially complied with the restraining order and Indo–California canceled the show cause and temporary injunction hearings.

After a non-jury trial, the trial court rendered final judgment in favor of Indo–California against Indo–Texas. The judgment included a permanent injunction—generally tracking the settlement agreement—requiring that Indo–Texas:

(1) not sell or distribute any products in a package bearing the words "Indo" or "Indo European" in any form, except for products originating with Plaintiff Indo–European Foods Inc.;

(2) eliminate from the names of Indo–Texas's two stores, located in Richardson, Texas and Arlington, Texas, as used on the premises, in advertising, or on trucks, one of the words "Indo" or "European";

(3) place near the entrance to each of the stores, in a manner visible to entering customers, a disclaimer the "the store is not associated in any way with Indo–European Foods™ of California"; and

(4) not use as the name of their stores the name (i) "Indo–European," (ii) "Indo Foods," or (iii) any name using the word "Indo" without a distinguishing suffix, which suffix will not incorporate the word "European" or any derivation, variation or misspelling thereof, including changing the name of the corporate Defendant Indo European Foods, Inc., a Texas corporation, in its company records and on all filings with state and federal authorities and on all accounts with any business or person to comply with this injunction no later than 30 days from the date of the judgment.

The trial court also awarded Indo–California judgment against Indo–Texas, jointly and severally, for $75,000 in damages, $45,000 in attorney's fees through trial with additional awards for appeals, costs of court, and postjudgment interest. The judgment excluded Jamal Qaddura because he was never served and did not appear in court.

Indo–Texas filed a timely motion for a new trial, which was overruled by operation of law. Indo–Texas appealed.

## LEGAL AND FACTUAL SUFFICIENCY

In issues one and six, Indo–Texas contends the evidence is insufficient to support the trial court's judgment as to damages and as to Issam Qaddura.

Because the trial court did not make findings of fact or conclusions of law, we must assume that it made all findings in support of its judgment. *Pharo v. Chambers County, Tex.*, 922 S.W.2d 945, 948 (Tex.1996); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989) (per curiam). Furthermore, when findings of facts and conclusions of law are not requested or filed, we must affirm the judgment of the trial court on any legal theory that finds

support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

We review the trial court's implied findings under established standards of review. In addressing a legal sufficiency challenge, we view the evidence in a light most favorable to the finding, consider only the evidence and inferences that support the finding, and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). We uphold the finding if more than a scintilla of evidence exists to support it. *Id.* In reviewing a factual sufficiency challenge, we examine all of the evidence and set aside a finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

**Damage Award**

Settlement agreements typically provide for the payment of a fixed sum; thus, damages are easily measured by the amount unpaid. The settlement agreement in this case did not require payment of a fixed sum; it required Indo–Texas to perform certain acts to stop the alleged infringement of Indo–California's trademark and contained a mutual release of claims. In exchange for this agreement, Indo–California dismissed the trademark suit with prejudice.

In its first issue, Indo–Texas claims evidence is insufficient to support the amount of damages awarded because those damages represent damages for trademark infringement, not damages for breach of contract. Indo–Texas argues the proper measure of Indo–California's breach of contract damages must revolve around how much profit it lost as a result of Indo–Texas's breach, not on how much Indo–Texas profited during a specific time period. Indo–Texas alleges Indo–California did not produce any evidence of its lost sales or lost profits resulting from the breach of the settlement agreement.

Indo–California disagrees, asserting that in this case its damages are properly measured by Indo–Texas's profits during the time it breached the settlement agreement. Indo–California argues that the benefit of its bargain under the settlement agreement—that Indo–Texas would stop using the mark—can be measured by the trademark infringement damages it could have recovered if the trademark suit had not been settled. Indo–California asserts that because damages under the Lanham Act include the defendant's profits, those profits are the correct measure of damages for breach of the settlement agreement. *See* 15 U.S.C. § 1117(a).

In resolving this issue, we must consider the intersection between the remedies available for breach of contract and for trademark infringement. The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952). Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest. *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 247 (Tex.App.-San Antonio 1998, pet. denied); *see Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex.App.-Austin 1998, pet. denied). In an appropriate case, just compensation may require an award protecting one or more of these interests. *See* RESTATEMENT (SECOND) OF CONTRACTS § 344 (1981). The most common interest protected in breach of contract cases is the expectation, or benefit of the bargain, interest. Protecting this interest seeks to restore the non-breaching party to the same economic po-

sition in which it would have been had the contract not been breached—thus giving the party the benefit of its bargain. *CDB Software, Inc. v. Kroll,* 992 S.W.2d 31, 37 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The benefit of the bargain is measured by the prevailing party's anticipated receipts and losses caused by the breach less any cost or other loss he has avoided by not having to perform. *Lafarge,* 977 S.W.2d at 187 (citing RESTATEMENT (SECOND) OF CONTRACTS § 347); *Coon v. Schoeneman,* 476 S.W.2d 439, 441 (Tex. Civ.App.-Dallas 1972, writ ref'd n.r.e.).

■■■ The remedies available for trademark infringement are based on principles of equity. *See* 15 U.S.C. §§ 1116 (injunctive relief), 1117 (profits, damages, costs, attorneys' fees), 1118 (destruction of infringing articles). The primary remedy in most cases is an injunction against the infringing activities. An injunction alone, under appropriate circumstances, fully satisfies the equities of a given case. *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 130, 67 S.Ct. 1136, 91 L.Ed. 1386, (1947); *Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 369 (5th Cir.2000). However, the Lanham Act entitles a trademark holder to recover the defendant's profits, subject to the principles of equity. *See* 15 U.S.C. § 1117(a). An award of the defendant's profits is not automatic, however, but is based on several factors including the willfulness of the infringement, whether sales have been diverted, the adequacy of other remedies, any unreasonable delay in asserting plaintiff's rights, the public interest in making the conduct unprofitable, and whether it is a case of palming off. *See Quick Techs., Inc. v. Sage Group PLC,* 313 F.3d 338, 349 (5th Cir.2002), *cert. denied,* —— U.S. ——, 124 S.Ct. 66, 157 L.Ed.2d 29 (2003); *Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 554 (5th Cir.1998).

■■■ We agree this is a breach of contract case, not a trademark infringement case. Here, however, the breach is directly linked to trademark infringement. Indo–California's benefit of the bargain—what it would have received but for Indo–Texas's breach of the settlement agreement, was the peaceable enjoyment of its trademark without conduct of Indo–Texas that would infringe on that trademark. So in essence, while this is a contract case, the measure of the value of Indo–California's bargain is the same as the trademark infringement remedies available for the infringing conduct.

Indo–Texas argues strenuously that it cannot be held liable for trademark infringement remedies in a breach of contract suit. We are reluctant, however, to adopt a theory, such as the one argued by Indo–Texas, that would permit a defendant to avoid trademark remedies—including accounting for its profits—merely by agreeing to stop infringing only to breach that agreement once the trademark suit is dismissed with prejudice. Such a theory would only encourage sharp practices and deter settlement of trademark infringement claims through agreements to cease infringing conduct. Such a theory would also defeat the purposes of trademark remedies, which include compensating the plaintiff for any injury suffered, preventing the defendant's unjust enrichment from use of the mark, and deterring infringing conduct. *See Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 585 (5th Cir.1980); RESTATEMENT (THIRD) OF UNFAIR COMPETITION §§ 36, 37 cmt. b (1995) (discussing award of defendant's profits as compensation for plaintiff's lost profits, to prevent unjust enrichment, or to deter future infringement); 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS §§ 30:59, 30:64 (4th ed.2004). Under the facts of this case, we conclude Indo–California's breach

of contract damages—the benefit of its bargain—are the same as the damages it could have recovered in a trademark suit for the same conduct. We further conclude the trial court did not err in allowing recovery of Indo–Texas's profits from the infringing activity. We now turn the evidence of the amount of the profits awarded as a remedy.

■ If an accounting of profits is appropriate, the plaintiff may recover only those profits attributable to the unlawful use of its trademark. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942); *Pebble Beach Co.*, 155 F.3d at 554–55. The Supreme Court has held that the burden is upon the defendant to show that he made no profit from the infringing use of the mark. *See Mishawaka*, 316 U.S. at 206, 62 S.Ct. 1022; *see also* 5 McCarthy, *supra*, § 30:65. The Court acknowledged that the plaintiff may receive a windfall, but stated that, "where it is impossible to isolate the profits" from the infringing conduct, the windfall should go to the plaintiff rather than the wrongdoer. *See Mishawaka*, 316 U.S. at 206–07, 62 S.Ct. 1022. The plaintiff need only show the defendant's gross sales; the burden then falls to the defendant to "prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); *Maltina Corp.*, 613 F.2d at 586.

■ The record indicates that Indo–Texas sold other products that did not have Indo–California's name, but about five percent of its sales were of dry products using Indo–California's name and mark. The record also indicates that Indo–Texas used Indo–California's name and mark on its store fronts, trucks, business cards, credit card accounts, and in the name of the corporate defendant.

Indo–California requested damages for the period Indo–Texas was allegedly in breach of the settlement agreement. There is evidence in the record that Indo–Texas was in breach of the settlement agreement from September 25, 1998 to June 20, 2000. There is no dispute as to Indo–Texas's gross sales during this period. Based on Shoukry's 1998 income tax information, Indo–California calculated Indo–Texas's gross income as 21.33 percent of sales. Using this number, Indo–California calculated Indo–Texas's gross income for the period to be about $733,000. Indo–Texas disputed that its profits were that high, especially on the dry goods that directly infringed on Indo–California's mark. Indo–Texas argued the same tax return showed its net profit for 1998 was only $7920, or less than one-half of one percent of sales. Indo–Texas, however, did not offer any evidence of its costs and expenses during the time period of the breach of the settlement agreement. At best, it offered evidence that its net profit on infringing goods was closer to five percent (or less) of sales.

■ Indo–Texas also contends the damages were too speculative, and thus may not be recovered. *See S.W. Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938). However, "[a] party who breaks his contract cannot escape liability merely because it is impossible to state or prove a perfect measure of damages." *Id.* Courts distinguish between uncertainty as to the fact of damages, which may preclude recovery, and uncertainty as to the amount of damages, which "will not defeat recovery." *Id.* When the fact of damages is clear, the plaintiff is required to prove his damages with only "reasonable certainty." *See Bildon Farms, Inc. v. Ward County Water Improvement Dist. No. 2*, 415 S.W.2d 890, 897 (Tex.1967).

Although Indo–Texas argues recovery of profits was not a foreseeable consequence

of the breach of the settlement agreement, the trial court reasonably could have concluded that trademark remedies—including defendant's profits—were within the contemplation of the parties at the time they agreed to settle a trademark infringement suit that specifically requested an award of profits and damages resulting from defendant's willful infringement. *See Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex.1981).

There is evidence that Indo–California's customers were confused by Indo–Texas's use of the name and mark and that at least one customer switched to products other than Indo–European. There is some evidence of the fact of damage resulting from the breach of the settlement agreement. There is no uncertainty as to the fact of Indo–California's damages; thus, any uncertainty as to the amount will not defeat recovery. Indo–California argued that it was entitled to all of Indo–Texas's gross profits ($733,000) for the period, or in the alternative, to $75,000, about ten percent of those profits. Indo–California based the ten percent figure on the estimate of five percent of sales for the infringing dry goods and another five percent attributed to Indo–Texas's use of the mark in its business name and on its store fronts and trucks. The trial court awarded Indo–California $75,000. The trial court could rationally find this number was a product of calculation not speculation. Applying the appropriate standards of review, we conclude the evidence is legally and factually sufficient to support the trial court's damages award. We resolve Indo–Texas's first issue against it.

## Breach by Issam Quaddura

▆ In its sixth issue, Indo–Texas contends there is no evidence Issam Qaddura breached the settlement agreement. This issue is inadequately briefed because Indo–Texas cites no authority and merely cites to evidence that Shoukry was the owner of both stores. *See* Tex.R.App. P. 38.1(h). Even so, there is no merit to this argument.

There is evidence in the record that Issam, Shoukry, and Jamal Qaddura are brothers. Issam Qaddura was an employee at one or both of Shoukry Qaddura's stores. Issam Qaddura was also a named defendant in the federal trademark suit. He signed the settlement agreement and promised to perform the terms of that agreement. By doing so, he obligated himself to see that the settlement agreement was performed. Nothing in the settlement agreement indicates the obligations of the defendants were not joint. As a general rule, an obligation entered into by more than one person is presumed to be joint. 12 Richard A. Lord, Williston on Contracts § 36:3 at 621 (4th ed.1999). If a contract imposes joint liability on several parties then all joint obligors are bound for the whole performance of the contract. *See Pitman v. Lightfoot*, 937 S.W.2d 496, 528 (Tex.App.-San Antonio 1996, writ denied); Restatement (Second) of Contracts §§ 288–89 (1981). We resolve Indo–Texas's sixth issue against it.

### Injunctive Relief

▆ In its second issue, Indo–Texas contends the injunctive relief granted in the judgment is void and should be dissolved. Specifically, Indo–Texas claims the injunction failed to comply with Texas Rules of Civil Procedure 683 and 687. Tex.R. Civ. P. 683, 687. We conclude neither rule invalidates the injunction granted in the final judgment.

Indo–Texas claims the permanent injunction granted in the judgment does not set forth the "reasons for issuance" and the injunction exceeds the scope allowed by rule 683. Rule 683 provides that an order granting an injunction "shall set

forth the reasons for its issuance." *See* TEX.R. CIV. P. 683. This rule, however, applies only to temporary restraining orders and temporary injunctions, not permanent injunctions. *See Shields v. State,* 27 S.W.3d 267, 273 (Tex.App.-Austin 2000, no pet.). Even so, the injunction granted in the final judgment is definite, clear, and precise, and the judgment complies with the rules relating to judgments. *See* TEX.R. CIV. P. 301.

Texas Rule of Civil Procedure 687 sets out the requisites of a writ of injunction. TEX.R. CIV. P. 687. Indo-Texas argues the permanent injunction in the judgment does not comply with these requisites. The final judgment, however, is not a writ of injunction. A writ is a form of process issued by the court clerk based upon an order of the court and directed to a sheriff or constable for service. *See* TEX.R. CIV. P. 688 (clerk to issue writ when petition, order, and bond have been filed for a temporary restraining order or temporary injunction). Rule 687 applies to the actual writ of injunction, not to the final judgment granting the permanent injunction. TEX.R. CIV. P. 687. Thus neither rule renders the injunction granted in the judgment void. We resolve Indo-Texas's second issue against it.

█ In its third issue, Indo-Texas contends the evidence is insufficient to support the injunctive relief granted. Specifically, Indo-Texas argues a permanent injunction was not a necessary relief for Indo-California. We review the trial court's action in granting a permanent injunction for a clear abuse of discretion. *Priest v. Tex. Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ).

█ There is evidence in the record that Indo-Texas did not comply with the terms of the settlement agreement in the past and thus permanent injunctive relief

was needed. Indo-California's private investigator, Darrel Joy, provided evidence of non-compliance several months after the settlement agreement, including: pictures of delivery trucks with the name "Indo European" on the side; receipts and food packages bearing "Indo European"; and phone logs of employees answering store phones using the name "Indo European." The court also heard evidence of the unique value of Indo-California's name and how misuse by Indo-Texas diluted the name. Based on the evidence presented to the trial court, we conclude it did not clearly abuse its discretion in granting the permanent injunction; thus we resolve Indo-Texas's third issue against it.

## ATTORNEY'S FEES

In its fourth issue, Indo-Texas contends the trial court abused its discretion in awarding attorney's fees against Indo-Texas.

█ A party may not recover attorney's fees from an opposing party unless recovery is permitted by statute or by agreement between the parties. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.,* 997 S.W.2d 803, 816 (Tex.App.-Dallas 1999, no pet.). The parties expressly agreed in the settlement agreement that the prevailing party in any suit to enforce the agreement would be entitled to recover attorney's fees, as well as court costs and expenses. Attorney's fees are also recoverable by statute on claims for breach of an oral or written contract. TEX. CIV. PRAC. & REM.CODE § 38.001(8) (Vernon 1996).

█ Indo-Texas claims Indo-California never presented a claim for payment. However, the settlement agreement does not require presentment as a condition to recovery of attorney's fees by the prevailing party. While presentment is a requirement for recovery of attorney's fees

under chapter 38 of the civil practice and remedies code, no particular form of presentment is required and it may be written or oral. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.002; *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex.1981). The record reflects Indo–California's attorney delivered a letter demanding performance under the settlement agreement to Indo–Texas on the same date this suit was filed. We conclude this letter sufficiently presented Indo–California's claim to Indo–Texas and that Indo–California prevailed on its suit to enforce the settlement agreement. Thus the award of attorney's fees was proper. We resolve Indo–Texas's fourth issue against it.

■ In its fifth issue, Indo–Texas contends the evidence is insufficient to support the award of attorney's fees to Indo–California. We disagree. When reviewing the reasonableness of an award of attorney's fees, we should consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

■ The record indicates Indo–California's attorney testified he was familiar with the fees reasonably and customarily charged by attorneys for services. He stated $50,000 would be reasonable in this case, taking into consideration all the appropriate factors. Indo–Texas questioned the amount of time spent on the case but not the rates charged. The court awarded $45,000. After examining the evidence and those factors set forth above, we find there is sufficient evidence to support the trial court's award of attorney's fees. Accordingly, we resolve Indo–Texas's fifth issue against it.

## REQUEST TO MODIFY THE JUDGMENT

■ In its seventh issue, Indo–Texas contends that the judgment should be reformed to include a take nothing judgment as against Jamal Qaddura. We disagree. First, Indo–Texas has no standing on appeal to complain about the judgment's resolution of claims against Jamal Qaddura. *See Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999); *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 149–50 (Tex.1982) (party may not complain on appeal of errors that do not injuriously affect her or that merely affect the rights of others).

Second, there is no question that this judgment is final. It was rendered after a nonjury trial on the merits, expressly disposed of all parties, including Jamal by mentioning him and that he was never served and never appeared, and disposed of all claims. *See N.E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 896–97 (Tex. 1966) (judgment rendered in case regularly set for trial on merits is presumed final and claims not expressly disposed of considered waived, abandoned, dismissed, or discontinued).

■ Proceeding to trial before all defendants are served operates as a discontinuance or dismissal as to the defen-

dants that have not been served and do not appear at trial. *First Dallas Petroleum, Inc. v. Hawkins*, 715 S.W.2d 168, 169–70 (Tex.App.-Dallas 1986, no writ). When a plaintiff takes a judgment against the other defendants, the case stands as if there has been a dismissal with respect to the unserved defendant. *Id.*

Thus, this case stands as if Indo-California had dismissed Jamal before trial. Rule 161 expressly provides that "[n]o defendant against whom any suit may be so dismissed [for failure to serve] shall be thereby exonerated from any liability, but may at any time be proceeded against as if no such suit had been brought and no such dismissal ordered." TEX.R. CIV. P. 161. A discontinuance in practical effect is indistinguishable from a dismissal without prejudice. *See Hawkins*, 715 S.W.2d at 169–70. A take nothing judgment, however, is a judgment on the merits, and is inconsistent with a dismissal without prejudice. *See Garcia–Marroquin v. Nueces County Bail Bond Bd.*, 1 S.W.3d 366, 379 n. 8 (Tex.App.-Corpus Christi 1999, no pet.). The judgment correctly noted that Jamal had not been served and did not award relief against him; it could not have exonerated him from liability by rendering a take nothing judgment. We resolve Indo–Texas's seventh issue against it.

### CONCLUSION

Having resolved each of Indo–Texas's seven issues against it, we affirm the judgment of the trial court.