NO. 07-09-0392-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 31, 2011

_____

BETTY DOMINGO, APPELLANT

V.

CINDY SKIDMORE, DONNA WALKER, ESTELLA BARRON,
BRENDA MITCHELL, GINA SCHULTZ, SHARLA PIERCE, AND
LGROUP, A TEXAS GENERAL PARTNERSHIP, APPELLEES

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-535,854; HONORABLE LES HATCH, JUDGE
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Betty Domingo, challenges the trial court's judgment rendered in favor

of Appellees, Cindy Skidmore, Donna Walker, Estella Barron, Brenda Mitchell, Gina

Schultz, Sharla Pierce and LGroup, a Texas General Partnership[1] in Domingo's suit for

breach of contract. Presenting four issues, Domingo maintains the trial court erred

---

[1]Where necessary to the discussion, Skidmore, Walker, Barron, Mitchell, Schultz, Pierce, and LGroup will
be identified by name; otherwise, they will be collectively referred to as Appellees.

when it failed to grant (1) her request for a jury instruction that numbers were not an essential element of the contract and such error probably caused the rendition of an improper judgment; (2) a directed verdict and judgment on the evidence and on the issue of the existence of a partnership between the individual Appellees because such was established as a matter of law; (3) a directed verdict and judgment on the evidence on the issue of damages since such was established by the trial evidence as a matter of law; and (4) a directed verdict and judgment on the evidence on the issue of attorney's fees since such was established by the evidence as a matter of law. By her reply brief, she emphasizes reversible error in the trial court's refusal to instruct the jury that numbers were not an essential element in forming a contract, arguing that this Court's decision in *Domingo v. Mitchell*, 257 S.W.3d 34, 41 (Tex.App.--Amarillo 2008, pet. denied) (*Domingo I*) is law of the case. We affirm.

**Background Facts**

Beginning in 2004, Domingo and Mitchell, friends for thirty years and also co-workers, played the Texas Lottery on numerous occasions. Their arrangement included an agreement to pool their money to purchase Quick Pick tickets and split all winnings equally. Regardless of who purchased the tickets, it was not unusual for one to advance payment for the other and reimburse that person, win or lose.

On March 9, 2006, Skidmore sent an e-mail to Mitchell asking if she was interested in joining a lottery group. Skidmore added that they would have "better odds" with a "group of people." After enlisting a select group of friends and co-workers, including Mitchell, on March 23rd, Skidmore sent an e-mail inviting them to meet on

2

March 30th at a local restaurant to socialize, pool their money, and pick numbers to play the lottery in April.[2] That e-mail also provided, "[i]f there is someone else you want to invite (& you feel pretty sure they won't drop out) let me know."

According to Domingo, after Skidmore's March 23rd e-mail, Mitchell invited her and Cindy Ruff, another co-worker, to participate in the lottery group for April 2006, specifically, Lotto Texas and Mega Millions. Ruff declined the offer due to insufficient funds. Domingo, however, inquired how much her contribution would be, and Mitchell was uncertain but offered to cover for her and be reimbursed at a later time.

During the March 30th gathering of the LGroup,[3] Skidmore, Mitchell, and the remaining four members of the group agreed to enter seventeen separate drawings for April 2006 at one dollar each per drawing, i.e., seventeen dollars per person. Each of them contributed six "unique"[4] numbers. Mitchell paid her contribution and submitted her numbers, and according to the testimony presented at trial, did not mention Domingo's name to the group or contribute for Domingo to participate in the April drawings.[5]

---

[2]Donna Walker did not attend due to a previous engagement, but she did send money and numbers via Gina Schultz.

[3]Skidmore testified that prior to that evening, "LGroup" was merely a "Broadcast Message ID" for grouping e-mail contacts to save from typing individual names in the "To" line. According to Skidmore, the LGroup subsequently became a registered general partnership but, at the time, was more akin to a trust.

[4]This term was used frequently throughout trial; basically, it refers to tickets other than Quick Picks.

[5]During her deposition taken on July 25, 2006, Mitchell testified that Domingo asked her on March 31st if she had paid her share to enter the April drawings. Mitchell told Domingo she did not pay her part because she did not have enough money. Notwithstanding Appellees' defensive theory that Domingo was not invited to participate in the April drawings, at no time did Mitchell tell Domingo that she was not invited to play in April.

Schultz offered to buy the tickets for the LGroup and on March 31st at 2:51 p.m., sent the following e-mail to the other Appellees:

> Here are the numbers we're playing in APRIL. I decided to pick different numbers for Mega and Lotto. I'm going to wait until tomorrow to actually buy the tickets, so if anyone decided to pick different numbers from the ones listed below or if you'd like to use different numbers for Mega and Lotto, just email me by noon tomorrow.

On April 29, 2006, one of the tickets purchased by the group won. After choosing the cash value option, the winnings totaled $20,925,315.23.[6] Domingo's exclusion from a share of the winnings eventually prompted her to consult an attorney because, according to her theory, but for Mitchell's broken promise, she would have been entitled to a share. She filed suit on July 18, 2006, and subsequently amended her allegations to assert a breach of contract cause of action against Mitchell, as well as joint and several liability against the LGroup and its members, contending that Mitchell acted with full authority of the LGroup under sections 3.02 and/or 3.03 of the Texas Revised Partnership Act. See Tex. Bus. Orgs. Code Ann. §§ 152.302, 152.303 (West Pamph. 2010).[7] Domingo also sought recovery of attorney's fees.

Mitchell filed a combination traditional and no-evidence motion for summary judgment, which the trial court granted. After a severance from the causes of action against the remaining Appellees, Domingo appealed and this Court found the existence of a genuine issue of material fact as to whether Domingo and Mitchell had entered into

---

[6]According to pretrial hearings, pursuant to a Rule 11 agreement, Skidmore, Walker, Barron, Mitchell, Schultz, and Pierce each received a one-seventh share or $2,989,333.75. The remaining one-seventh was deposited in trust pending the outcome of this case.

[7]Effective January 1, 2006, statutes related to general partnerships appear in chapter 152 of the Texas Business Organizations Code (West Pamph. 2010)

a valid oral contract and whether Mitchell had breached that contract. *Domingo*, 257 S.W.3d at 41. Summary judgment was reversed and the cause was remanded to the trial court for further proceedings. *Id.* at 42.

The trial court then consolidated the severed claims with the underlying cause of action and the case was called for jury trial on October 26, 2009. After presentation of the evidence, the case was submitted to the jury with five questions. The jury answered "No" to Question No. 1 which asked whether Domingo and Mitchell intended to bind themselves to an agreement with specific terms which were listed in the question. The jury's negative finding to Question No. 1 pretermitted consideration of the remaining questions. Based on the jury's answer, the trial court signed a judgment granting Appellees' motion for judgment on the verdict, denied Domingo's judgment notwithstanding the verdict and ordered that Domingo take nothing by her suit. Domingo appealed and presents four issues for consideration.

**Issue One. The trial court erred when it failed to grant her request for a jury instruction that numbers were not an essential element of the contract and such error probably caused the rendition of an improper judgment.**

As submitted to the jury, Question No. 1 asked:

Did Betty Domingo and Brenda Mitchell intend to bind themselves to an agreement that included the following terms:

1. Betty Domingo would participate in the LGroup Lottery Pool for April 2006;

2. Brenda Mitchell would pay for Betty Domingo's costs to participate in the LGroup Lottery Pool for April 2006;

3. Betty Domingo would repay Brenda Mitchell for Betty Domingo's cost to participate in the LGroup Lottery Pool for April 2006; and

5

To form an agreement, the parties must have the same understanding of the subject matter of an agreement and all its essential terms.

You are instructed that if Betty Domingo and Brenda Mitchell agreed to other essential terms but failed to specify price, it is presumed a reasonable price was intended.

You are instructed that, in deciding whether Betty Domingo and Brenda Mitchell reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

You are instructed that a fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly or reasonably inferred from other facts proved.

Answer "Yes" or "No."

Domingo submitted a proposed charge that was essentially the same as the one submitted to the jury with the exception of two additional paragraphs:

You are instructed that providing numbers for the lottery drawing was not an essential term of the agreement, if any, between Betty Domingo and Brenda Mitchell.

You are instructed that consideration is essential to a contract and the Court has found that sufficient consideration to create a binding contract is present by the exchange of promises wherein Brenda Mitchell agreed to advance Betty Domingo's share of the lottery tickets and Betty Domingo agreed to reimburse Brenda Mitchell, if you find that conversation to have occurred.

During the charge conference, Domingo's request for inclusion of those paragraphs was refused.

We review an alleged error in the jury charge for abuse of discretion. *Louisiana-Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998). "The court shall submit

6

such instructions and definitions as shall be proper to enable the jury to render a verdict." *See* Tex. R. Civ. P. 277. *See also Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 221 (Tex. 2010). An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *Crump*, 330 S.W.3d at 221. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording has been requested in writing and tendered by the party complaining of the judgment . . . . Tex. R. Civ. P. 278. "A judgment will not be reversed for charge error unless the error was harmful because it probably caused the rendition of an improper verdict . . . ." *Crump*, 330 S.W.3d at 225. "Charge error is generally considered harmful if it relates to a contested, critical issue." *Id.* We examine the entire record to determine whether the charge probably caused an improper judgment. *Id.*

In *Domingo I*, in the context of reversing a summary judgment in favor of Mitchell, this Court provided that because numbers were subject to change after the March 30th meeting of the LGroup, they could not have been regarded as an essential element of the contract, as a matter of law.[8] 57 S.W.3d at 41. We found a fact issue existed as to whether Mitchell and Domingo had entered into a binding contract sufficient to defeat summary judgment.[9] *Id.*

---

[8]It was undisputed that Domingo did not provide unique numbers for the April drawings. Mitchell's defensive theory was that Domingo was not entitled to judgment, as a matter of law, because numbers were an essential element of any contract between Domingo and Mitchell or the LGroup.

[9]We did not decide, as a matter of law, that numbers were not an essential element of the disputed contract. We merely decided that Mitchell did not establish, as a matter of law, that they were. Whether they were or were not was a fact issue to be decided.

At trial, Appellees' defensive theory was that Domingo was never invited to participate in the April drawings. Mitchell testified she never invited Domingo to participate in April because it was not her group and she did not have authority to invite anyone. Skidmore explained that her March 9th e-mail in which she stated, "[i]f there is someone else you want to invite (& you feel pretty sure they won't drop out) let me know," meant the group would talk about others to determine whether they should be invited. Skidmore unequivocally testified that even if another member had invited Domingo to participate in the April 2006 drawings and Domingo had paid her money and submitted numbers, she would still have refused to allow Domingo to participate because she had not personally invited her.

By her own testimony, Domingo admitted she had no expectation of being involved in the April 2006 drawings. She testified as follows:

Q.  Well, did you have any expectation after [Mitchell] told you she didn't put you in the lottery, did you have any expectation of being in the group after that for the April drawing?

A.  No.

Q.  Okay. So when they announced the April results, did you expect to be involved?

A.  No.

* * *

Q.  Did you get angry at [Mitchell], and in between the time that she didn't pay your money and the time that you finally got in the May lottery, did you complain at all?

A.  No.

Q.  Why didn't you?

8

A.       I just didn't have a reason to complain, because I had gotten over it. There was no reason for me to keep -- we were friends. I wasn't going to keep harping on it because she didn't pay my money . . . .

Because the question of whether or not numbers were an essential element of the disputed contract was a disputed fact issue, Appellant's requested instructions would have constituted an impermissible comment on the weight of the evidence and the trial court would have erred in giving those instructions. Furthermore, even assuming *arguendo* that the trial court erred in refusing Domingo's requested instructions, based on the evidence presented, any alleged error did not result in the rendition of an improper judgment. Issue one is overruled.

### Standard of Review for Directed Verdict in Favor of Plaintiff

Essentially, a challenge to the denial of a directed verdict is a challenge to the legal sufficiency of the evidence. *See Haynes & Boone, L.L.P. v. Chason*, 81 S.W.3d 307, 309 (Tex.App.--Tyler 2001, pet. denied). A directed verdict in favor of a plaintiff on their cause of action is proper under Rule 268[10] only when the evidence conclusively establishes a party's right to judgment as a matter of law. See *Kline v. O'Quinn*, 874 S.W.2d 776, 785 (Tex.App.--Houston [14th Dist.] 1994, writ denied). It is a rare case where a trial court errs in failing to grant a directed verdict in favor of a plaintiff because if there is any evidence of probative value raising an issue of fact on any material question presented, a directed verdict is improper. *Qantel Business Sys. v. Custom Controls*, 761 S.W.2d 302, 304 (Tex. 1988).

---

[10]Tex. R. Civ. P. 268.

9

**Issue Two. The trial court erred when it failed to grant a directed verdict and judgment on the evidence and on the issue of the existence of a partnership between the individual Appellees because such was established as a matter of law.**

Domingo argues that notwithstanding Mitchell's denial that she entered into an oral contract with Domingo, Mitchell had the authority to do so under a general partnership. We disagree. The Texas Business Organizations Code governs partnerships formed on or after January 1, 1996. *See* Tex. Bus. Orgs. Code Ann. § 402.001 (West Pamph. 2010). *See Ingram v. Deere*, 288 S.W.3d 886, 894 n.4 (Tex. 2009). Hence, we apply chapter 152 of the Code. The rules for determining the existence of a partnership include:

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) agreement to share or sharing:

   (A) losses of the business; or

   (B) liability for claims by third parties against the business; and

(5) agreement to contribute or contributing money or property to the business.

Tex. Bus. Orgs. Code Ann. § 152.052 (West Supp. 2010).

The only members of LGroup to testify at trial were Skidmore and Mitchell. When asked whether LGroup was a general partnership, Skidmore testified over objection that it was a trust. After the group won the lottery in April 2006, an attorney set up LGroup Managed Trust. Skidmore testified that her intent for the March 30th

meeting was to gather with friends and co-workers of her choosing for the purpose of socializing, pooling their money to play the lottery, sharing in winnings and establishing LGroup. According to her, there was no official LGroup prior to that meeting. Mitchell did not offer any testimony regarding LGroup as a partnership. Additionally, no evidence was presented that all Appellees expressed an intent to be partners, participate in control of LGroup or be liable for claims by third parties.

Although the common law required proof of all five factors enumerated above to establish the existence of a partnership, *Coastal Plains Dev. Corp. v. Micrea*, *Inc.*, 572 S.W.2d 285, 287 (Tex. 1978); the statutory scheme contemplates a less formalistic approach to recognizing formation of a partnership. *Ingram*, 288 S.W.3d at 895. In *Ingram*, the Court was presented with a case of first impression on how many factors were required to form a partnership.[11] In applying a totality of the circumstances test, the Court concluded that conclusive evidence of all five factors established a partnership as a matter of law. *Id.* at 903-04.

In the underlying case, there was not conclusive evidence establishing any of those factors. Consequently, a partnership was not established as a matter of law and the trial court did not err in refusing to grant a directed verdict on the issue of partnership. Issue two is overruled.

---

[11]The *Ingram* Court was reviewing the existence of a partnership under the Texas Revised Partnershp Act (TRPA), the predecessor to the Texas Business Organizations Code. *See* 288 S.W.3d at 894 n.4.

**Issue Three. The trial court erred when it failed to grant a directed verdict and judgment on the evidence on the issue of damages since such was established by the trial evidence as a matter of law.**

Domingo urges that she was entitled to one-seventh, $2,989,330, of the lottery winnings because it would have placed her in the economic position she would have occupied if Mitchell had not breached their oral contract. We disagree. The universal rule for measuring damages for breach of a contract is just compensation for the loss or damage actually sustained. *Qaddura v. Indo-European Foods*, *Inc.*, 141 S.W.3d 882, 888 (Tex.App.--Dallas 2004, pet. denied) (citing *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952)). Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest. *Qaddura*, 141 S.W.3d at 888. The most common interest protected in a breach of contract case is the expectation or benefit of the bargain interest. *Id.*

In the underlying case, it is undisputed among the parties that one-seventh of the total lottery winnings would have been a proper measure of damages. However, recovery of those damages was contingent upon the jury finding the existence of a valid contract. As discussed earlier, the evidence did not conclusively establish a contract between Domingo and Mitchell. Hence, the trial court did not err in refusing to grant a directed verdict on the issue of damages. Issue three is overruled.

**Issue Four. The trial court erred when it failed to grant a directed verdict and judgment on the evidence on the issue of attorney's fees since such was established by the trial evidence as a matter of law.**

A party is entitled to recover reasonable attorney's fees in a breach of contract case if the claim is for an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. §

12

38.001(8) (West 2008).  To recover under the statute, a litigant must (1) prevail on the breach of contract claim and (2) recover damages.  *MBM Financial v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009).

Relying on *Brown v. Bank of Galveston Nat. Ass'n.*, 963 S.W.2d 511 (Tex. 1998), and *Board of County Com'rs v. Amarillo Hosp.*, 835 S.W.2d 115 (Tex.App.--Amarillo 1992, no writ), Domingo maintains she should recover her attorney's fees because clear and uncontradicted testimony was presented and the trier of fact was duty bound to award attorney's fees as a matter of law.  Again, we disagree.

Extensive testimony and evidence was presented by one of Domingo's attorneys in support of an award of attorney's fees for her legal team.  However, any award of attorney's fees was contingent on proof of a valid contract and recovery of damages.  Conflicting evidence was presented throughout trial on whether Domingo and Mitchell entered into an oral contract.  The jury found against Domingo on that issue.  Without prevailing on the contract claim, Domingo was not entitled to recover attorney's fees under section 38.001 of the Code regardless of whether uncontradicted evidence of those fees was presented.[12]  *See Green Intern. v. Solis*, 951 S.W.384, 390 (Tex. 1997) (attorney's fees not recoverable without first recovering on breach of contract claim).  Issue four is overruled.

---

[12]An important distinction in *Amarillo Hospital District*, 835 S.W.2d at 126-128, was that attorney's fees were awarded on appeal to the prevailing party at trial.  Domingo's failure to prevail on her contract claim prevents her from recovering attorney's fees under section 38.001(8).

**Reply Issue.  Law of the Case Doctrine**

By her reply brief, without citation to a single authority, Domingo reurges her argument that the trial court reversibly erred in refusing to instruct the jury that numbers were not an essential element of the contract.  She maintains that our statement in *Domingo I* that "any numbers submitted at the meeting on March 30th were an uncertainty as they were subject to being changed . . . could not have been regarded by the parties as an essential element of the contract," is law of the case.  We disagree.

"The 'law of the case' doctrine is defined as that principle under which *questions of law* decided on appeal to a court of last resort will govern the case throughout its subsequent stages."  *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986).  (Emphasis added).  The doctrine applies to questions of law and does not apply to questions of fact.  *Id.*  Under the law of the case doctrine, an appellate court is ordinarily bound by its initial decision if there is a subsequent appeal in the same case.  *Briscoe v. Goodmark Corp.* 102 S.W.3d 714, 716 (Tex. 2003).  The law of the case doctrine is intended to achieve uniformity of decisions as well as judicial efficiency.  The doctrine is based on public policy and is aimed at putting an end to litigation by barring a party from challenging matters of law fully litigated and determined in the previous appeal.

In *Domingo I*, this Court did not decide as a matter of law that numbers were not essential to formation of the alleged contract.  We simply held that in the context of a summary judgment, there was more than a scintilla of evidence "to raise a genuine issue of material fact on whether the parties entered into a valid oral contract . . . ."  In other words, we did not decide that numbers were not an essential element of the

14

contract as a matter of law; we merely decided that Mitchell, the summary judgment movant, did not establish, as a matter of law, that they were. Consequently, the doctrine of "law of the case" is inapposite.

Whether or not providing a set of numbers was an essential element of Domingo's agreement with either Mitchell or the LGroup was a fact issue to be decided by the jury. Therefore, not only did the trial court not err by denying the requested instruction, it would have erred if it had. Domingo's reply issue is overruled.

## Conclusion

Having overruled Betty Domingo's four issues and sole reply issue, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

15