

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00485-CV

Bill **FLETCHER** and Rachelle Fletcher,
Appellants

v.

Erin **DAY** and Patrick Vanderwarker,
Appellees

From the 348th District Court, Tarrant County, Texas
Trial Court No. 348-228247-08
The Honorable Dana M. Womack, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: July 31, 2013

AFFIRMED

Appellants Bill and Rachelle Fletcher appeal from a judgment requiring them to pay appellees Erin Day and Patrick Vanderwarker $56,000.00 in actual damages. In a single issue, the Fletchers argue the evidence was legally and factually insufficient to support these damages. We overrule the Fletchers' sole issue, and affirm the trial court's judgment.

### BACKGROUND

In 2005, Day and Vanderwarker purchased a house, located in Haslet, Texas, from the Fletchers. After living in the house for two years, Day and Vanderwarker began to notice problems

with the second story office and gameroom. The second story floors were extremely noisy. Bumps appeared in the ceiling below. Subsequently, Day and Vanderwarker learned that the second story rooms were an addition to the house that was built without any building permits. They hired a structural engineer who examined the second story, determined the upstairs rooms were not constructed in accordance with the building code, and drafted a proposal to repair the damage. They also contacted two remodeling contractors to find out how much it would cost to carry out the repairs recommended by the engineer. One contractor estimated the repairs would cost $56,000.00.

Thereafter, Day and Vanderwarker filed the underlying lawsuit against the Fletchers, bringing claims for common law and statutory fraud, breach of contract, negligence, breach of express and implied warranties, and violations of the Texas Deceptive Trade Practices Act. The trial court held a two-day bench trial. At trial, the evidence showed that the house, as originally built, did not have a second story living area. The Fletchers had renovated the upstairs attic, converting it into a living area. The trial court found in favor of Day and Vanderwarker, awarding them $56,000.000 in actual damages. In its findings of fact and conclusions of law, the trial court concluded the Fletchers' actions with regard to the sale of the house, including their representations that they were not aware of any room additions, structural modifications, or other alterations or repairs made without the necessary permits or not in compliance with building codes, constituted statutory and common law fraud. The trial court also found that, as a result of the Fletchers' actions, Day and Vanderwarker suffered actual damages in the amount of $56,000.00, and that this amount represented the reasonable and necessary costs to them for the repair and restoration of the house. The Fletchers appealed.

**STANDARD OF REVIEW**

In evaluating whether the evidence is legally sufficient to support a finding, we must credit evidence favorable to the judgment if a reasonable factfinder could, disregard contrary evidence unless a reasonable factfinder could not, and reverse the factfinder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded factfinder to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain legal sufficiency challenges only if the record reveals (1) that there is no evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In evaluating whether the evidence is factually sufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting is so weak, or so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When the party without the burden of proof on a fact issue complains of an adverse fact finding, that party must show that there is "insufficient evidence" supporting the adverse finding. *Gooch v. Am. Sling Co., Inc.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ).

**THE EVIDENCE**

To establish their damages, Day and Vanderwarker presented the testimony of two expert witnesses and several documents. The first expert witness was Robert Lee Nicholas, the structural

engineer who was hired by Day and Vanderwarker after they noticed the problems with the second story. Nicholas performed a visual inspection of the premises, looking at the second story floor. Nicholas cut a few holes in the garage ceiling to examine the framing, but he refrained from cutting more holes to avoid damage to the living areas. He also examined the attic framing and looked at the roof. Nicholas observed some signs of distress to the roof. Nicholas found that the ceiling joists for the garage were being used for floor joists, a use for which they were not designed and which added weight onto the center of the floor joists and overstressed them. Nicholas explained that this was a problem because it caused the floor to bounce and move quite a bit, making it uncomfortable for walking. According to Nicholas, the floor would continue to sag over time and, eventually, this sagging could cause roof leaks and cracks in the ceiling. Nicholas also discovered that the stairs to the addition failed to comply with the relevant building code. Specifically, the rise and runs were of different lengths and exceeded the lengths required by the building code.

In addition to inspecting the structure, Nicholas contacted the City of Haslet to verify that no permits had been requested for the addition. He also verified that the relevant construction code was the 2003 International Residential Code (IRC). Then, Nicholas checked the design of the floor joists and determined the proper specifications for the addition. He checked the beams and headers over the garage and at the stairs to determine their specifications. According to Nicholas, the IRC required that framing for a second floor space to be occupied by people, other than a bedroom, must have at a minimum a live load capacity of 40 pounds per square foot. The second story addition, which consisted of an office and game room, did not have a live load capacity of 40 pounds per square foot. Nicholas further recommended that a window be added to one of the second story rooms. He explained that there was no window in the main room, and that the addition of a window would provide an alternative escape route in the event the stairs were blocked. He also explained that in addition to making renovations to bring the framing of the addition up to

code, the garage ceiling would have to be completely removed and replaced, and the HVAC and electrical components might need to be reworked.

In preparing for his testimony, Nicholas reviewed the affidavit of Scott Maudlin, the original homebuilder, who stated the house was not designed to support a second story. Nicholas agreed with Maudlin's conclusion that the house was not designed to support a second story. Nicholas further testified that before adding a second story to the house, a builder would need to reinforce or "beef up" the walls and the supporting structures to support the higher load. Nicholas also reviewed the affidavit from a city employee, Elaine Simpson, stating that no permits were ever requested for the addition. According to Nicholas, permits should have been requested for the addition. In Nicholas's opinion, which was based on his inspection of the house and the documents and affidavits he had reviewed, the addition was not done properly.

The initial report Nicholas prepared for Day and Vanderwarker was also introduced into evidence. Nicholas's report stated: "The roof over the garage is showing signs of excessive deflection that is consistent with the overloaded floor trusses." The report contained a second floor framing plan that showed the requirements to bring the framing of the structure in compliance with the building code. Attached to the report was an illustration of the plan. In addition, the report stated that the ceilings under the floor (the garage ceilings) would have to be replaced and the HVAC (heating, ventilation, and air conditioning) and electrical components may need to be reworked. Finally, the report stated that the stairs should be removed and replaced with stairs that complied with the building code, and that second floor windows should be installed for an alternate escape route in case of fire.

The second expert witness presented by Day and Vanderwarker was David Lee Butcher, a remodeling contractor who had twenty years' experience in the remodeling industry. Butcher testified he was contacted by Day and Vanderwarker to prepare an estimate of what it would cost

to make the second floor addition of the house "habitable." Before preparing the estimate, he talked to Day and Vanderwarker, reviewed the report prepared by the engineer, and inspected the addition itself. Butcher said he would begin the job by talking to the builder to find out the exact type of beams that were used for the structure. Butcher explained that he would want to verify whether or not the beams would in fact support a second-floor load. Then, he said he would begin the demolition of the area and go through the same process as in new construction, beginning with the framing. This would have to be done in such a way so as to pull the electrical and the HVAC components out of the way. Butcher said he thought the renovation would cost "roughly fifty to fifty-six thousand dollars." He said he had performed "somewhat" of a "breakdown" of the costs, but admitted he did not figure each item exactly because there was no guarantee that he would be hired. He further stated he tried to get "as close an estimate as possible based on experience, based on similar jobs that I've done in the past." He admitted that, if anything, he had "a tendency to be a little bit high" because he did not want to be in a situation where he underbid the job. Butcher wanted to give his customers "an honest outlook of what it is going to take." His estimate included materials, labor, profit, and overhead. Butcher's written estimate, stating that the cost to complete the renovation was $56,000.00, was also presented.

Finally, additional evidence was presented showing that another contractor's estimate of the cost of the renovation was within several thousand dollars of Butcher's $56,000.00 estimate.

The Fletchers presented no witnesses or other evidence to controvert the damages evidence presented by Day and Vanderwarker.

### DISCUSSION

Plaintiffs have the burden to prove their damages with a reasonable degree of certainty. *U.S. Renal Care, Inc. v. Jaafar*, 345 S.W.3d 600, 613 (Tex. App.—San Antonio 2011, pet. denied); *A.B.F. Freight Sys., Inc. v. Austrian Imp. Serv., Inc.*, 798 S.W.2d 606, 615 (Tex. App.—Dallas

1990, writ denied). Although damages must be established with reasonable certainty, they need not be established with mathematical precision. *O and B Farms, Inc. v. Black*, 300 S.W.3d 418, 422 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 890 (Tex. App.—Dallas 2004, pet. denied)). Furthermore, to recover damages for the cost of repairs to property, a plaintiff must show that the cost of repairs was reasonable and necessary. *2 Fat Guys Inv. v. Klaver*, 928 S.W.2d 268, 273 (Tex. App.—San Antonio 1996, no writ); *Merchants Fast Motor Lines, Inc. v. State*, 917 S.W.2d 518, 523 (Tex. App.—Waco 1996, writ denied). In order to establish that repairs are reasonable and necessary, it is not imperative that the terms "reasonable" and "necessary" be used. *Klavner*, 928 S.W.2d at 273. Instead, a damaged party is only required to present evidence of damages sufficient and competent enough to justify the factfinder's conclusion that the costs are in fact reasonable and necessary. *Id.*

In arguing that the evidence was insufficient to support the damages awarded, the Fletchers contend that Nicholas's testimony was "highly uncertain" with regard to the existence of damages. However, Nicholas's testimony and the other evidence presented at trial showed the house was not designed to support a second story living area, and that the house was showing signs that it was not adequately supporting the second story living area. For example, the evidence showed the house had sagging second story floors and excessive roof deflection or bending. Moreover, Nicholas's testimony and the other evidence presented at trial showed the second story addition was not built in compliance with the relevant building code. The evidence therefore supported a finding that damages existed.

The Fletchers also contend that Nicholas's testimony was unreliable because it was based on speculation. The Fletchers did not challenge the reliability of Nicholas's testimony in the trial court; however, they challenge Nicholas's testimony on appeal, asserting that the engineer's

testimony was so speculative that it was not probative. An expert must explain how he reached his conclusion. *Paradigm Oil Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 74 (Tex. App.—San Antonio 2007, pet. denied). Expert opinion that has no factual substantiation in the record is speculative or conclusory. *Id.* "Opinion testimony on damages must be supported by objective facts, figures or data from which the amount may be ascertained with reasonable certainty; if it is not it is speculative and conclusory and will not support a judgment." *Id.* (citing *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649-50 (Tex. 1994)).

Again, we disagree with the Fletchers. Nicholas's opinions and conclusions were based on his examination of the house, his discussions with the homeowners, the information he received from the original builder, and the relevant building codes. Nicholas testified in detail about how he reached his opinions and conclusions. Nicholas's testimony was therefore not speculative.

The Fletchers further contend that Nicholas's testimony was speculative because he was unable to say whether or not the headers over the garage door needed to be strengthened. Nicholas explained that determining whether or not the garage headers would need to be strengthened would require "destructive testing" of the premises, which he did not perform. When the case went to trial, Day and Vanderwarker had not yet made any renovations to the second story. Thus, it appears that, due to the nature of the damages involved and the circumstances of this case, Nicholas was unable to ascertain the full extent of the damages. If the fact of damages has been established, then the inability to calculate the exact amount of damages is not fatal. *Black*, 300 S.W.3d at 422 (citing *Qaddura*, 141 S.W.3d at 890). If the best available evidence affords a reasonable basis for the factfinder to calculate damages, then recovery cannot be denied because the exact amount of damages cannot be ascertained. *Id.* (citing *Vance v. My Apartment Steak House of San Antonio, Inc.*, 633 S.W.2d 480, 484 (Tex. 1984)). We, therefore, conclude Nicholas's testimony and his report afforded the factfinder a reasonable basis for calculating damages.

The Fletchers further contend that Butcher's written estimate for the cost of the renovation was flawed because it failed to list the cost of each part of the repair separately. The Fletchers cite no authority for the proposition that the written estimate had to itemize the cost of the repairs, and they never lodged any objection to the written estimate on this ground in the trial court.

In addition, the Fletchers contend Butcher's written estimate was flawed because it adopted all of Nicholas's recommendations as obligatory. Although Butcher testified his estimate was based, at least in part, on the engineer's report and recommendation, the estimate itself does not show that all of Nicholas's recommendations were adopted as obligatory. The written estimate states:

> The cost to complete the renovation and bring the game room and study up to code (which includes framing, electrical, and HVAC) is $56,000.00. Work will consist of demolition of the storage area, reinforcing the floor joists in the game room and study to meet code, installing new sheetrock where necessary, tape, bed and texture, new trim where necessary, paint all walls and ceiling in the affected area, and installing carpet on stairs and the second floor.
>
> These prices include everything from demolition to painting along with the final clean. They also include the cost of permits and architectural plans, if necessary.

One of the recommendations that the Fletchers assert Butcher adopted as obligatory was the addition of a second story window. However, Butcher's written estimate makes no mention of this item. The Fletchers also contend that by accepting Nicholas's assumptions about needed repairs as true, Butcher's estimate was tainted by the same speculation and conjecture that tainted Nicholas's testimony. However, as we previously concluded, Nicholas's testimony was not tainted by speculation and conjecture. Furthermore, the evidence showed the second contractor's estimate was within several thousand dollars of Butcher's estimate.

## CONCLUSION

Based on the evidence presented, we conclude that the trial court had a reasonable basis to calculate damages, and that the damages awarded were reasonable and necessary. We further conclude that the evidence was legally and factually sufficient to support the damages awarded. The trial court's judgment is therefore affirmed.

Karen Angelini, Justice