

# NUMBER 13-21-00345-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CIRILO GARZA AND
JEANETTE GARZA,                                                    Appellants,

v.

HARLINGEN CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT,                                    Appellee.

## On appeal from the 445th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justice Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Longoria**

By two issues, Appellants Cirilo and Jeanette Garza (the Garzas) appeal a trial

court's granting of appellee Harlingen Consolidated Independent School District's

(HCISD) plea to the jurisdiction and alternatively granting HCISD's no-evidence motion for summary judgment. We reverse in part and affirm in part.

## I. Background

On February 22, 2018, the Garzas' minor son, A.G.[1], passed away. Settlement discussions ensued after the Garzas informed HCISD of their potential claims against it. On January 10, 2019, the parties entered into the "Compromise Settlement Agreement and Full and Final Mutual Release" (settlement agreement). In exchange for terms agreed upon by HCISD, the Garzas released HCISD from:

> [A]ny and all claims, causes of actions, debts, demands, obligations, liabilities and suits whatsoever, whether arising by statute or by common law, including, but not limited to, claims under Title IX of the Education Amendments of 1972, [§] 504 of the Rehabilitation Act of 1973, 42 U[.]S[.]C[.] [§] 1983, the Americans with Disabilities Act, the Office of Civil Rights, Department of Justice, Texas and United States Constitution, the Texas Commission on Human Rights Act, [and] the Texas Labor Code.

The terms of the settlement agreement, in relevant part, included the following:

> b.     [HCISD] agrees to coordinate book donations with books on the prevention of bullying and suicide prevention to be housed at all HCISD Middle Schools in honor of [A.G.] within sixty (60) business days of [the] signing of this Agreement. Book plates in the books will include the information that this book was donated in Memory of [A.G.] – 2005-2018. Book Plates will be donated by [HCISD].
>
> . . . .
>
> d.     [The Garzas] will be allowed to present [A.G]'s Journey as coordinated and approved by the Chief Academic Officer and the requirements provided in [HCISD] Policy. . . .

---

[1] To protect the identity of minor children, we refer to the child by his initials. *See* TEX. R. APP. P. 9.8(a).

On January 9, 2020, the Garzas filed their original petition asserting a breach of contract action against HCISD for its failure to comply with certain terms under the settlement agreement. In their original petition, the Garzas pleaded that "[i]n exchange for certain obligations, [the Garzas] agreed to release [HCISD] from any and all claims arising out of or in any way related to the incident, including but not limited to, claims under Title IX of the Education Amendments of 1972, [§] 504 of the Rehabilitation Act of 1973, 42 [U.S.C. §], [and] common law claims, among others." The Garzas alleged:

> Specifically, but not exclusively, [HCISD] failed to provide book donations on the prevention of bullying and suicide prevention to be housed at all HCISD Middle Schools in honor of [A.G.] within sixty (60) business days of the signing of the Agreement. [HCISD] further failed to allow [the Garzas] to present [A.G.]'s Journey as coordinated and approved by the Chief Academic Officer and the requirements provided in [HCISD] Policy . . . .

The Garzas sought economic damages, actual damages (both general and special), nominal damages, exemplary damages, costs, and attorney's fees. The Garzas also pleaded that "[a]ll conditions precedent to [the Garzas'] claim for relief have been performed; have occurred; or have been excused from occurring."

On July 9, 2021, HCISD filed its "Plea to the Jurisdiction, or in the Alternative, No Evidence Motion for Summary Judgment" with attached exhibits. In its filing, HCISD argued that the Garzas' breach of contract claim did not invoke Chapter 271's limited statutory waiver of immunity, and therefore, HCISD retained its sovereign immunity. *See* TEX. LOC. GOV'T CODE §§ 271.151–271.160. In addition, HCISD argued that the Garzas could not establish the breach element of their breach of contract claim because HCISD complied with every term of the settlement agreement. In addition, HCISD argued that the Garzas could not establish the damage element of their breach of contract claim.

3

On August 3, 2021, the Garzas filed their "Plaintiffs' Objections and Motion to Strike Evidence and Their Response to Defendant's Plea to the Jurisdiction and No Evidence Motion for Summary Judgment" with attached exhibits, which included deposition testimony from Jeanette . In their filing, the Garzas objected to the admission of several exhibits that HCISD had attached to its plea to the jurisdiction and no-evidence motion for summary judgment. The Garzas also argued that Chapter 271 was inapplicable, that the settlement agreement released HCISD from several classes of claims for which it has waived immunity, including claims under the United States Constitution related to Title IX of the Education Amendment of 1972 and 42 U.S.C. § 1983, and that HCISD may not regain immunity by virtue of a settlement agreement. The Garzas also argued that they were entitled to expectancy damages, mental anguish damages, and attorney's fees related to the breach of settlement agreement. Finally, the Garzas argued that there was more than a scintilla of evidence pertaining to HCISD's alleged breach of the settlement agreement.

On August 10, 2021 the trial court heard arguments from the parties on HCISD's plea to the jurisdiction. HCISD reiterated its argument that it retained immunity pursuant to Chapter 271 of the Local Government Code because the Garzas had failed to claim damages within that provision's limited waiver of immunity. HCISD also argued that the Garzas could not establish the four elements of its breach of contract claim, and claimed that those elements were jurisdictional. The Garzas reiterated their argument that Chapter 271 was not applicable to the case, and that HCISD's immunity was waived under *Lawson* and others. HCISD claimed that *Lawson* was a plurality opinion that was not analogous

4

to the instant case and had no precedential value. After hearing arguments by the parties, the trial court took the matter under advisement. No evidence was introduced or admitted into the record at the hearing.

On September 20, 2021, the trial court signed its order granting HCISD's plea to the jurisdiction and no-evidence motion for summary judgment. Specifically, the order stated:

> The Court, having considered the Plea to the Jurisdiction, finds that the Plea is well-taken and should be granted. Alternatively, the Court, having considered the Motion, the credible summary judgment evidence and the arguments of counsel, finds that the Motion is well-taken and should be granted. I[t] [is] [therefore] [ordered], [adjudged] and [decreed] that [HCISD]'s Plea to the Jurisdiction, or in the Alternative, No Evidence Motion for Summary Judgment is in all things hereby GRANTED.

This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.     PLEA TO THE JURISDICTION

## A.     Standard of Review and Applicable Law

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446).

5

Immunity from suit deprives a trial court of subject matter jurisdiction and may be raised in a plea to the jurisdiction. *City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011). To prevail on a claim of immunity, the governmental defendant "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). "When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction." *Id.* "If, however, the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Id.* at 770–71. "[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Id.* at 771.

**B.     Discussion**

In their first issue, the Garzas argue that the trial court erred in granting HCISD's plea to the jurisdiction because the waiver of immunity provision of Chapter 271 of the Texas Local Government Code is inapplicable. In addition, relying on *Texas A&M University-Kingsville v. Lawson* and its progeny, the Garzas argue that because HCISD agreed to settle classes of claims from which it was not immune, it could not thereafter claim immunity from suit in an action that alleged a breach of the settlement agreement.

*See* 87 S.W.3d 518 (Tex. 2002); *see also* TEX. LOC. GOV'T CODE ANN. §§ 271.151–271.160.

In *Lawson*, the plaintiff sued the university after he was terminated, alleging various causes of action, including violations of the Whistleblower Act. *Lawson*, 87 S.W.3d at 518–19. The Whistleblower Act contains a clear and unambiguous waiver of immunity. *See* TEX. GOV'T CODE ANN. § 554.0035. The parties settled the case and the plaintiff brought a subsequent suit alleging the university breached the settlement agreement. *Lawson*, 87 S.W.3d at 519. The university argued that any breach of the settlement agreement was a separate claim barred by immunity. *Id.* The supreme court disagreed:

> While it is certainly true, as the University argues, that a suit for breach of a settlement agreement is separate and apart from the suit on the settled claim, enforcement of a settlement of a liability for which immunity is waived should not be barred by immunity.
>
> . . . .
>
> The State should not regain waived immunity by settling a case . . . [W]e hold that, having waived immunity from suit in the Whistleblower Act, the State may not now claim immunity from a suit brought to enforce a settlement agreement reached to dispose of a claim brought under that Act.

*Id.* at 521–23.

HCISD argues that Chapter 271 of the Local Government Code, which waives immunity for governmental entities—such as school districts—in certain contract claims, pre-empts *Lawson*'s 2002 holding. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151–271.160. HCISD cites to no authority declaring that *Lawson*'s holding was abrogated by the enactment of Chapter 271, we have found none, and we decline from holding the same.[2]

---

[2] We also note that the Texas Supreme Court has suggested that a government entity could lack

7

Nonetheless, HCISD argues that Chapter 271 is the "only avenue" for the Garzas to bring their breach of contract claim against HCISD, and their claims must be analyzed under this section of the Local Government Code. HCISD's argument, relying on *Zachry Construction Corportation v. Port of Houston Authority of Harris County*, 449 S.W.3d 98 (Tex. 2014), treats all the elements of the breach of contract claim in this dispute as "jurisdictional facts"; in other words, the Garzas must demonstrate at least a fact dispute as to each element to overcome immunity from suit. However, *Zachry* involved a breach of contract claim implicating Chapter 271 of the Local Government Code, and thus involved a different type of claim with a different source of authority for the waiver of governmental immunity than *Lawson*. *See id.* As we demonstrate below, the waiver of immunity in this dispute was established before the Garzas' breach of settlement agreement suit was ever filed, and thus the relevant authority is *Lawson* and not *Zachry*.

HCISD argues that *Lawson* is a plurality opinion and notes that we have previously held that "*Lawson* 'has no precedential value'" in *Dyer v. Hidalgo County, Texas*, Nos. 13-12-00579-CV, 13-12-00622-CV, 2013 WL 5593426, at *4 (Tex. App.—Corpus Christi–Edinburg, October 4, 2013 no pet.) (mem. op.). While we acknowledge our statement from our 2013 unpublished opinion,[3] the Texas Supreme Court has since reiterated the

immunity under Chapter 271 or *Lawson*. *See City of Houston v. Jones*, 197 S.W.3d 391, 392 (Tex. 2006) (per curiam) ("While this case has been pending on appeal, the Legislature has enacted [§§] 271.151–[271].160 of the Local Government Code, which waive immunity from suit for certain claims against local governmental entities, including municipalities. Sections 271.152–[271].154 'apply to a claim that arises under a contract executed before [September 1, 2005] . . . if sovereign immunity has not been waived with respect to the claim' before that date. Jones should have the opportunity to argue in the trial court that the City's immunity from suit is waived by these provisions. The court should also consider whether the City lacks immunity under *Lawson*.") (cleaned up).

[3] We note that HCISD ignores the full context of our statement in *Dyer*, which demonstrates that our disposition of that case did not solely turn on the fact that *Lawson* was a plurality decision:

8

rule in *Lawson* stating that "a governmental entity cannot create immunity for itself by settling a claim for which it lacks immunity only to assert immunity from suit in a subsequent action to enforce the government's agreement." *Hughes v. Tom Green County*, 573 S.W.3d 212, 221 (Tex. 2019). We acknowledged *Hughes* in a recent case applying *Lawson* analysis. *See City of Pharr v. Garcia*, 581 S.W.3d 930, 932 n.1 (Tex. App.—Corpus Christi–Edinburg 2019, no pet.) ("Although *Lawson* was a plurality opinion, the supreme court cited it with approval in *Texas A & M Univ*[*ersity*] *Sys*[*tem*] *v. Koseoglu*, 233 S.W.3d 835, 838–39 (Tex. 2007), and then adopted the holding in *Hughes v. Tom Green County*, 573 S.W.3d 212, 214 (Tex. 2019).").

HCISD further argues that because this case involves a pre-litigation settlement agreement, our precedent in *Donna ISD v. Gracia* controls. *See* 286 S.W.3d 392 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). We previously addressed this same argument in *City of Pharr. See City of Pharr*, 581 S.W.3d at 932–34. In *City of Pharr*, Garcia filed suit for breach of a settlement agreement that Garcia had entered into with the City of Pharr (City). *Id.* at 931. The City filed a plea to the jurisdiction based on Garcia's pleading, which the trial court denied, and the City appealed. *Id.* The City argued that unlike *Lawson*, the settlement agreement in their case did not settle a pending lawsuit, and according to the City, we held in *Gracia* that *Lawson* does not apply to any pre-suit

---

Dyer's reliance on *Lawson* is misplaced for at least two reasons. First, as a plurality opinion, *Lawson* has no precedential value. Second, *Lawson* is factually distinguishable because the plurality explained that it could not determine the validity of the settlement agreement in the case's then-current procedural posture—"[n]o evidence or argument on the validity of the agreement was offered in the trial court" and the issue remained for further determination on remand. In the instant case, however, the record shows that the settlement agreement is unenforceable, as a matter of law.

*Dyer*, 2013 WL 5593426, at *4 (internal citations omitted).

settlement agreement. *Id.* at 932. However, we rejected the City's invitation to draw a bright line distinction between claims settled before and after suit is filed. *Id.* at 934. We clarified that our focus in *Gracia* was on whether immunity had previously been waived, not whether suit had been filed:

> The City reads too much into *Gracia.* As we said in *Gracia*, a *Lawson* analysis "hinges on [the] underlying claim." *Id.* at 394. Although *Gracia* involved a pre-suit settlement agreement, we held that the plaintiff's claim "had no adjudicative value in our court system" because, at the time the parties entered the settlement agreement, the plaintiff had failed to exhaust his administrative remedies under Chapter 21 of the Texas Education Code. *Id.* at 393–95; *see generally O'Neal v. Ector Cty. Indep. Sch. Dist.*, 251 S.W.3d 50, 52 (Tex. 2008) (per curiam) (holding the trial court lacked subject matter jurisdiction over the plaintiff's Chapter 21 claim because the plaintiff failed to exhaust her administrative remedies). In other words, whether the plaintiff had filed suit in *Gracia* was irrelevant; his claim "had no adjudicative value in our court system" because no trial court had jurisdiction over his claim. *Id.*

> As the *Lawson* Court explained, "when a governmental entity is *exposed to suit* because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Lawson*, 87 S.W.3d at 521 (emphasis added). The focus under *Lawson*, then, is on whether immunity from the underlying claim existed at the time of the settlement agreement (i.e., whether the governmental unit was "exposed to suit"), not whether a suit had actually been filed. *Harris Cty. Hous. Auth. v. Rankin*, 414 S.W.3d 198, 204 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *City of Carrollton v. Singer*, 232 S.W.3d 790, 799–800 (Tex. App.—Fort Worth 2007, pet. denied); *see also Tex. Dep't of Health v. Neal*, No. 03-09-00574-CV, 2011 WL 1744966, at *4 (Tex. App.—Austin May 6, 2011, pet. denied) (mem. op.).

*Id.* at 933. We ultimately held that at the time the City and Garcia executed their settlement agreement, Garcia's underlying 42 U.S.C. § 1983 claim had "adjudicative value in our court system," and that after applying *Lawson*, the City was not immune from Garcia's suit for breach of their settlement agreement. *Id.* at 935 (citing *Gracia*, 286 S.W.3d at 395).

10

In their original petition, the Garzas pleaded that:

In exchange for certain obligations, [the Garzas] agreed to release [HCISD] from any and all claims arising out of or in any way related to the incident, including but not limited to, claims under Title IX of the Education Amendments of 1972, [§] 504 of the Rehabilitation Act of 1973, 42 [U.S.C. §] 1983, [and] common law claims, among others.

Inspection of the settlement agreement reveals that the Garzas released HCISD from a laundry list of claims, including claims under Title IX of the Education Amendment of 1972, [§] 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983. In addition, the Garzas submitted deposition testimony from Jeanette in their reply to HCISD's plea to the jurisdiction and no-evidence motion for summary judgment:

| [HCISD]: | . . . [O]ne of the things that I don't think was discussed here is that you had initially wanted to file, or had looked at suing [HCISD] or getting relief from [HCISD] as a result of certain actions they had related to your son's death, correct? |
|---|---|
| [Jeanette]: | Yes. |
| [HCISD]: | Okay [a]nd in doing so, you had numerous discussions with [HCISD] that ultimately led to the settlement agreement, correct? |
| [Jeanette]: | Yes. |
| [HCISD]: | Okay [a]nd the settlement agreement, as part of the agreement you went ahead and said that you would not file suit against [HCISD] for any claims under the [C]onstitution related to Title IX of the [E]ducation [A]mendment of 1972 and otherwise related to the handling of the investigation of the suicide of your son, correct? |
| [Jeanette]: | Yes. |
| [HCISD]: | And so that would be something that you—in exchange for the promises [HCISD] said that |

11

> they were taking in the settlement agreement, that you gave up?

[Jeanette]:     Yes.

As we mentioned in *City of Pharr,* "given immunity's broad scope, a pre-suit settlement often signals a compelling claim." *See City of Pharr*, 581 S.W.3d at 934. Based on the terms of the settlement agreement itself, we can reasonably infer that HCISD knew of its exposure to the Garzas' claims under Title IX of the Education Amendments of 1972, [§] 504 of the Rehabilitation Act of 1973, or 42 U.S.C. § 1983 as these claims were expressly included among others for which HCISD obtained a release. Furthermore, HCISD acknowledged in its plea to the jurisdiction that the settlement agreement was "intended to serve as a release of any and all potential claims under Title IX of the Education Amendments of 1972, [§] 504 of the Rehabilitation Act of 1973, and 42 U.S.C. [§] 1983."

We specifically note that in the settlement agreement, the Garzas expressly released any claim brought under Title IX and § 1983. Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, provides, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable against school districts through an implied right of action. *See Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979). Thus, HCISD is not immune from suit brought to enforce Title IX. In addition, § 1983 provides in relevant part

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

12

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "Texas courts have held that local governmental entities, such as school districts, do not enjoy immunity from suit under [§]1983." *Olgetree v. Glen Rose Indep. Sch. Dist.*, 226 S.W.3d 629, 633 (Tex. App.—Waco, 2007 pet. denied) (cleaned up). HCISD is not immune from suit under § 1983.

HCISD has failed to point to any jurisdictional prerequisite to filing any of the Garzas' claims under Title IX or § 1983 and we are not aware of any. Therefore, at the time HCISD and the Garzas entered into the settlement agreement, the Garzas' claims under Title IX and § 1983 had "adjudicative value in our court system." *See Gracia*, 286 S.W.3d at 395; *see also City of Pharr*, 581 S.W.3d at 935. Because the settlement agreement in this case reflects that HCISD acknowledged its exposure to a class of claims on which immunity had been waived (i.e., Title IX and § 1983), at a time when those claims remained viable, HCISD could not nullify the waiver of immunity by simply entering into a settlement agreement that precluded the Garzas from timely pursuing those claims then later asserting that government immunity applied to a claim that HCISD breached the settlement agreement. *See Lawson*, 87 S.W.3d at 521. Applying *Lawson*, we hold that HCISD is not immune from the Garzas' suit for breach of the settlement agreement. Accordingly, we need not reach HCISD's arguments regarding whether a waiver exits under Chapter 271 of the Texas Local Government Code. *See* TEX. R. APP. P. 47.1. We sustain the Garzas' first issue.

13

### III.    NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

## A.    Standard of Review and Applicable Law

We review a trial court's granting of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021); *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam). "We review the summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Eagle Oil*, 619 S.W.3d at 705; *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

"After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). We affirm a no-evidence summary judgment if, as to an essential element of the claim or defense identified in the motion: (1) there is a complete absence of evidence of a material fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered; (3) the evidence offered is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc.*, 953 S.W.2d at 711). On the other hand, the evidence

14

amounts to no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.*

A summary judgment cannot be affirmed on grounds other than those specified in the motion. TEX. R. CIV. P. 166a(c), 166a(i). If the trial court's order does not specify the grounds on which the summary judgment was granted, we must affirm if any of the grounds specified in the motion are meritorious. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

A settlement agreement is a contract between parties, a breach of which gives rise to a cause of action for breach of contract. *See Padilla v. LaFrance*, 907 S.W.2d 454, 461–62 (Tex. 1995); *see also Qaddura v. Indo-Eur. Foods, Inc.*, 141 S.W.3d 882, 888 (Tex. App.—Dallas 2004, pet. denied) (analyzing claim for breach of settlement agreement as a breach of contract). A claim for breach of contract includes the following essential elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *See Hall v. Lewis*, 639 S.W.3d 197, 209 (Tex. App.—Houston [1st. Dist.] 2021, no pet.).

Damages to the claimant resulting from the alleged breach is one of the essential elements of a breach-of-contract claim. *See WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "The goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach." *Parkway Dental Assocs., PA v. Ho & Huang Props., LP*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.]

15

2012, no pet.); *see also Bus. Prod. Supply v. Marlin Leasing Corp.*, No. 13-11-00371-CV, 2013 WL 7141350, at *25 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2013, pet. denied) (mem. op.). "The normal measure of damages in a breach-of-contract case is the expectancy or benefit-of-the-bargain measure." *Parkway Dental*, 391 S.W.3d at 607. The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Id.* at 607–08. "To restore an injured party to the position he would have been in had the contract been performed, it must be determined what additions to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it." *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex. App.—Dallas 2012, no pet.). (citing *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex. App.—Austin 1998, pet. denied)).

## B. Discussion

In their second issue, the Garzas argue that the trial court erred when it granted HCISD's no-evidence motion for summary judgment because they presented evidence as to all four elements of their breach of contract claim. *See Qaddura*, 141 S.W.3d at 888. The parties do not dispute the existence of the settlement agreement. HCISD does contend, however, that the Garzas presented no summary judgment evidence showing: (1) the Garzas performed or tendered performance regarding presentation of '[A.G.]'s Journey', (2) HCISD breached the contract, or (3) any alleged breach resulted in injury. We address the parties' arguments related to the fourth element of a breach of contract claim, damages sustained as a result of the breach, because it is dispositive. *See id.*

16

In their brief, the Garzas argue that they "testified that, as part of the measure of damages, [the Garzas] gave up the right to sue and the damages associated with the suit and the value of expectation, or the loss of the expectation from the breach of the agreement, that the [Garzas] testified to was $500,000 or an amount as to be determined by the jury." The record demonstrates that there was evidence presented to the trial court substantiating the Garzas' contention, i.e., Jeanette's deposition testimony. However, the potential damages of a lawsuit that the Garzas released upon entering the settlement agreement are not "expectancy damages" for a breach of that settlement agreement. *See Sharifi*, 370 S.W.3d at 146. The Garzas released HCISD from any and all claims upon entering the settlement agreement, thus potential damages of a suit that the Garzas "gave up" were unrecoverable whether HCISD breached the settlement agreement or not. Once the claims were released, the potential damages of those claims could have no effect on the Garzas' economic position after entering into the settlement agreement. In other words, Jeanette's testimony regarding her own value as to the potential damages of the lawsuit that the Garzas released is not testimony establishing what additions to the Garzas' wealth have been prevented by HCISD's alleged breach and what subtractions from their wealth have been caused by it. *See id.*

The Garzas also argue that damages for mental anguish may be recoverable for a breach of contract as consequential damages. Damages for breach of contract may include consequential damages. *Dall./Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 373 (Tex. 2019). Texas law requires that consequential damages be both (1) foreseeable at the time of contracting, and (2) calculable with reasonable

17

certainty. *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 279 (Tex. 2015); *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (per curiam). The Garzas further argue that mental anguish is compensable in suits for breach of certain special types of contracts that deal with intensely emotional, noncommercial subjects, citing *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997).

We note that the Garzas' original petition did not specifically plead for mental anguish damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(12) (defining "noneconomic damages" as "damages awarded for the purpose of compensating a claimant for," among other things, "mental or emotional pain or anguish"). Despite the legal authority enabling potential damages for mental anguish in breach of contract suits, the Garzas have not pointed out any evidence in the record demonstrating that the Garzas suffered mental anguish as a result of HCISD's alleged breach of the settlement agreement. We note that in her deposition, Jeanette testified as to having experienced anger and disappointment. However, said testimony, at most, constitutes "no more than a mere scintilla" of evidence regarding mental anguish. *See King Ranch, Inc.*, 118 S.W.3d at 751; *see also Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) ("When claimants fail to present direct evidence of the nature, duration, or severity of their [mental] anguish, we apply traditional 'no evidence' standards to determine whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of [mental anguish] damages.").

The record is devoid of any evidence of damages[4] sustained by the Garzas as a result of HCISD's alleged breach of contract. *See Qaddura*, 141 S.W.3d at 888. Thus, there is a complete absence of evidence as to an essential element of the Garzas' breach of contract claim. *See King Ranch, Inc.*, 118 S.W.3d at 751; *WTG Gas Processing, L.P.*, 309 S.W.3d at 643. We overrule the Garzas' second issue.

### IV. CONCLUSION

We reverse the trial court's order granting HCISD's plea to the jurisdiction and remand for further proceedings consistent with this opinion. In addition, we affirm the trial court's order granting HCISD's no-evidence motion for summary judgment.

NORA L. LONGORIA
Justice

Delivered and filed on the
17th day of November, 2022.

---

[4] Nominal damages are available for breach of contract. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664 (Tex. 2009). Although the Garzas may have suffered nominal damages, they did not raise such damages in their response to HCISD's plea to the jurisdiction and no-evidence motion for summary judgment, and the Garzas do not argue nominal damages on appeal. We cannot reverse a summary judgment on a ground not advanced in the trial court. *See Pinnacle Anesthesia Consultants, P.A. v. St. Paul Mercury Ins. Co.*, 359 S.W.3d 389, 398 (Tex. App.—Dallas 2012, pet. denied) (citing *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)); *see also* TEX. R. CIV. P. 166a(c) (stating that issues not presented to the trial court in writing cannot be considered as grounds for reversal on appeal).