**Affirmed and Memorandum Opinion filed April 18, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00699-CV

## ENVEN ENERGY CORPORATION AND ENVEN ENERGY VENTURES, LLC, Appellants

## V.

## DAVID M. DUNWOODY, JR., Appellee

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-39608**

## MEMORANDUM OPINION

Appellants EnVen Energy Corporation and EnVen Energy Ventures, LLC (collectively EnVen) appeal from the final judgment in favor of appellee David M. Dunwoody, Jr., signed following a lengthy jury trial. Finding no error, we affirm.

### BACKGROUND

EnVen is an oil and gas exploration company operating in the Gulf of Mexico. Steven Weyel served as EnVen's Chief Executive Officer (CEO). Weyel

hired Dunwoody in 2013. In 2015, EnVen transitioned from a limited liability partnership to a corporation. EnVen named Dunwoody its president at that time. As president, Dunwoody reported directly to Weyel. EnVen enjoyed considerable success as an operator in the Gulf of Mexico under their leadership.

EnVen instituted a 2015 Incentive Award Plan (2015 Plan) governing the distribution of the pool of EnVen stock shares reserved for employee awards. The 2015 Plan remained in place at all relevant times. The 2015 Plan established a stock reserve of about 1.8 million shares of which 37.5% was allocated to EnVen's top three executives. The remainder was held for future awards. Under the 2015 Plan, Dunwoody received 31% of the 2015 equity award, which amounted to two-thirds of the 46% amount Weyel received. David Carmony, chief operating officer, received a 23% share, which was half the amount Weyel received. These amounts matched the split that was granted under a previous plan in 2014. This split was referred as the 60/40/30 split.

Dunwoody signed an Employment Agreement in 2015. The Employment Agreement covered multiple topics, including his compensation. The Employment Agreement divided Dunwoody's compensation into different categories. In the first, Base Compensation, Dunwoody would receive $450,000 base pay each year. Bonuses were the second category and these would be based on various performance measures. Finally there would be Equity Compensation based on the 2015 Plan and any other equity incentive award plan adopted by EnVen.

The Employment Agreement provided that in the event Dunwoody terminated his employment with EnVen for "Good Reason," he would receive certain benefits, which collectively made up the defined term "Severance." "Severance" included (1) a "Separation Amount" based on a percentage of Dunwoody's Base Compensation and Target Bonus Amount divided into twelve

equal monthly payments; (2) a lump-sum payment of the pro-rata bonus amount owed to executives in the termination year at the time the other executives receive their bonuses; (3) Dunwoody and his family had the right to participate in EnVen's health plan at EnVen's expense for a period of 18 months; (4) reimbursement by EnVen if Dunwoody and his family elected to participate in EnVen's company health plan pursuant to COBRA for an additional 18-month period; and (5) the immediate vesting of Dunwoody's unvested shares of EnVen stock.

The Employment Agreement defined when Dunwoody would have "Good Reason" to terminate. "Good Reason" existed if any of the following circumstances occurred: (1) an action by EnVen that "results in the material diminution of [Dunwoody's] position, duties or authorities from those in effect immediately prior to such change in title, assignment or action by" EnVen; (2) EnVen failed to continue Dunwoody's participation in the 2015 Plan "unless [a substitute plan has been instituted] on a basis not materially less favorable to [Dunwoody], unless any such failure to continue in effect any plan or participation relates to a discontinuance of such plans or participation on a management-wide or Company-side basis;" or (3) EnVen's "material breach of any material provision of this [Employment] Agreement . . . ."

The Employment Agreement also provided "Good Reason" would not exist unless Dunwoody gave EnVen thirty days' notice and EnVen failed to cure the problem within that period of time. Additionally, Dunwoody had to comply, for the twelve-month period following his termination, with "Restrictive Covenants" found in Section 8 of the Employment Agreement. These included non-competition, non-disparagement, and non-disclosure provisions.

Finally, the Employment Agreement protected Dunwoody's Severance amount from being reduced for any reason. The Employment Agreement provided

3

that Dunwoody "shall not be required to mitigate the amount of any payment or benefit provided for in this Agreement by seeking other employment or otherwise, nor . . . shall the amount of any [such] payment or benefit . . . be reduced by any compensation or benefit earned by Executive . . ., by any retirement benefits, or be offset against any amount claimed to be owing by [Dunwoody] to [EnVen], or otherwise."

Weyel's relationship with Dunwoody publicly soured after Dunwoody asked Weyel's thoughts on a leadership succession plan and the timing for such a plan to go into effect. Weyel testified that he was "beyond offended" at Dunwoody's inquiry. Weyel's relationship with Dunwoody deteriorated from that point. Weyel lashed out at Dunwoody in profanity-laden tirades in front of other EnVen executives. Weyel also hired a friend, John Wilkirson, for the long vacant CFO position and began what Dunwoody believed was a campaign to reduce Dunwoody's role and compensation.

Dunwoody's equity share decreased after 2015. This comparative change in equity ownership was concealed from Dunwoody because Weyel kept the equity award changes confidential. This resulted from EnVen including only the number of shares Dunwoody received in his Restricted Stock Unit Grant Notices, not the total shares distributed, or the number awarded to other executives. As a result of this tactic Dunwoody did not know that his share was being diluted.

On May 9, 2019, Dunwoody delivered his Notice of Existence of Good Reasons to EnVen's board. EnVen responded that Good Reason did not exist. EnVen's response continued that "there [was] nothing to cure and no separation amount [was] owed" Dunwoody. At that point, Dunwoody notified EnVen in writing that due to EnVen's breach and repudiation, he considered his Employment Agreement terminated and he filed suit.

4

Dunwoody alleged that EnVen breached the Employment Agreement and repudiated its Severance obligation after Dunwoody resigned for three Good Reasons: (1) EnVen materially reduced his equity award; (2) EnVen materially diminished Dunwoody's authority within the company; and (3) EnVen violated the non-disparagement covenant in Dunwoody's Employment Agreement.

Several rulings by the trial court affected the course of the litigation. In an order granting a motion for partial summary judgment, the trial court determined that "prior to terminating his employment, [Dunwoody] complied with and satisfied the notice and cure requirements contained" in his Employment Agreement. The trial court refused to revisit that ruling during the trial. The trial court granted Dunwoody's motion for directed verdict ruling that there was "no genuine issue of material fact about whether [Dunwoody] elected to terminate" the Employment Agreement. In granting this motion, the trial court observed that Dunwoody's notice of termination letter "speaks for itself" that he considered the Employment Agreement terminated. The trial court also agreed with Dunwoody that there was no need to submit a breach question to the jury because "EnVen was obligated to vest [Dunwoody's] shares immediately" and that, if the jury finds Dunwoody had "Good Reason" for his termination, then "EnVen breached [the Employment Agreement] as a matter of law." In other words, the only issue for the jury to resolve was the existence of "Good Reason" under the Employment Agreement. On the question of damages, the trial court had previously rejected EnVen's argument that the jury should be asked about the "value of the things [EnVen] claim[ed] that Dunwoody avoided" because EnVen failed to plead this defensive issue, failed to disclose evidence of the alleged savings in their pretrial disclosures, and failed to introduce evidence during the trial on the value of the alleged savings.

At the conclusion of the evidence, the jury found that Dunwoody had Good Reason to resign based on EnVen's material breaches of the equity participation and non-disparagement clauses of his Employment Agreement. It further found that Dunwoody did not consent to or waive those breaches. The jury also found that (1) EnVen repudiated the Employment Agreement before Dunwoody terminated it; (2) EnVen materially breached the Employment Agreement by failing to vest Dunwoody's shares upon termination; (3) Dunwoody complied with the Employment Agreement's confidentiality and non-disparagement provisions; and (4) Dunwoody was entitled to damages. On the value of the only disputed element of Dunwoody's damages, the jury found that the value of Dunwoody's unvested stock was $5,161,699.38.[1] EnVen then filed multiple post-trial motions which were denied. The trial court signed a final judgment and this appeal followed.

## ANALYSIS

**I.      Because the evidence was undisputed that Dunwoody did not compete with EnVen, he did not waive his right to collect his Severance by not submitting the issue to the jury.**

EnVen argues in its first issue that Dunwoody waived his right to collect his Severance benefits because he "declined to obtain a jury finding on an essential condition to Severance." In EnVen's view, the non-competition requirement contained in section 8 of Dunwoody's Employment Agreement, titled "Restrictive Covenants," functioned as a condition precedent to his right to collect his Severance benefits. As a result, EnVen argues Dunwoody was required to submit his compliance with the non-competition requirement to the jury and, when he did

---

[1] The trial court had previously determined the amounts of the undisputed elements of Dunwoody's damages which included Dunwoody's separation payment, pro-rata bonus, health plan benefit, and COBRA benefit.

not, he waived any right to collect those benefits.

Dunwoody responds that the non-competition restrictions[2] contained in his Employment Agreement were not condition precedents to his recovery but merely covenants because the non-competition restrictions continued after much of the Severance was already owed to Dunwoody. Ultimately, Dunwoody asserts the answer to whether the non-competition restriction functions as a covenant or a condition precedent does not matter because it was undisputed at trial that Dunwoody complied with the requirement at all relevant times. We agree with Dunwoody.

In civil cases, a party has a right to a jury trial to determine disputed questions of fact. *In re Commitment of Harris*, 541 S.W.3d 322, 330 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "Uncontroverted questions of fact need not be and should not be submitted to the jury for its determination." *Id.* (quoting *Clark v. Nat'l Life & Accident Ins. Co.*, 200 S.W.2d 820, 822 (Tex. 1947)).

Having reviewed the record, we have found no evidence disputing Dunwoody's testimony that he complied at all relevant times with the non-competition restrictions in his Employment Agreement. David Williams, EnVen's Executive Vice President, testified that he knew Dunwoody "was doing everything he could to honor" the non-competition restrictions in his Employment Agreement and that Dunwoody was being careful to not violate it. In addition, EnVen admitted an email exchange into evidence, Exhibit 2092, wherein Dunwoody's attorney told EnVen's attorneys that "Dunwoody has not engaged and does not intend to engage in any activities prohibited by Section 8(c) of the Employment

---

[2] The restrictions found in section 8(c) of Dunwoody's Employment Agreement encompassed both refraining from competitive employment and specified types of investments in a competitive entity.

7

Agreement." EnVen, as part of their defense strategy that Dunwoody never terminated the Employment Agreement, pointed out to the trial court that Dunwoody admitted he was complying with Section 8's restrictions by returning confidential documents and following the non-competition restrictions. Finally, EnVen recognized this lack of dispute during its closing argument to the jury when it argued that Dunwoody never terminated the Employment Agreement because he treated it as if it was still in effect. Because there was no dispute over whether Dunwoody complied with the restrictions found in Section 8(c) of his Employment Agreement, Dunwoody was not required to submit a question on his compliance with the restrictions to the jury. *Id.*; *see Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("When the evidence is undisputed *or* the evidence conclusively proves performance or non-performance of the contract terms, the trial court should not submit the issue to the jury.") (emphasis added). We overrule EnVen's first issue on appeal.

## II. The trial court did not abuse its discretion when it excluded some of EnVen's proposed email exhibits.

EnVen makes two different arguments within its second appellate issue. We address each argument separately. In the first part of its second issue, EnVen argues the trial court abused its discretion when it excluded emails EnVen argues were relevant to its contention that Dunwoody could not collect his Severance benefits because he did not comply with the non-disparagement provisions found in his Employment Agreement. In EnVen's view, Dunwoody violated the provision when he sent disparaging emails to Weyel and others. In response, Dunwoody argues that the trial court did not abuse its discretion when it excluded some, but not all, of EnVen's proposed email exhibits because EnVen failed to produce the proposed exhibits during discovery. Dunwoody additionally argues that EnVen did not preserve this issue because its argument on appeal does not

8

comport with its argument to the trial court.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 610 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). A trial court exceeds its discretion when it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2015, no pet.). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for that of the trial court. *Barnhart*, 459 S.W.3d at 742. Thus, the question is not whether this court would have admitted the evidence. *Id.* Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Jones v. Mattress Firm Holding Corp.*, 558 S.W.3d 732, 737 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

In an effort to defend against Dunwoody's allegation that EnVen, through Weyel, disparaged him, EnVen sought to admit 28 Dunwoody emails that it asserted showed the existence of a "locker room" atmosphere in EnVen's offices. Dunwoody objected that the proposed exhibits had not been produced during discovery. The trial court announced it would review the emails to see if they should be excluded for some other reason. The trial court then reviewed the 28 emails outside the presence of the jury and initially excluded ten because they were sexually graphic, racist, or referenced alcohol in violation of a motion in limine. The trial court then told the parties the remaining 18 emails were too many and instructed EnVen to pick the seven best and let Dunwoody know during the next lunch break. EnVen responded that it intended to only offer seven out of the original 28 but some of the excluded emails were among the seven. It asked the

trial court to reconsider because the excluded emails were relevant. The trial court declined. On appeal, EnVen argues that the excluded emails were relevant because they were "directly probative of whether Dunwoody disparaged others." EnVen then argued that the excluded emails were not unfairly prejudicial.

Dunwoody responds that EnVen waived this issue because its argument on appeal is not the same argument it offered for admission of the documents in the trial court. *See Moran v. Mem'l Point Prop. Owners Ass'n*, 410 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding complaints on appeal must comport with the objections made in the trial court to preserve error). We need not reach the question of whether EnVen waived this argument because, even if they did not, we conclude the trial court did not abuse its discretion when it excluded the emails because it could have reasonably determined the emails were unduly prejudicial or cumulative of other emails that were admitted into evidence. *See* Tex. R. Evid. 403 (court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence"). We overrule the first argument raised in EnVen's second issue.

### III. The trial court did not err when it granted a directed verdict concluding that Dunwoody was excused from performing post-termination obligations.

In the second part of EnVen's second issue, EnVen argues the trial court erred when it granted a directed verdict concluding that Dunwoody was excused from performing any post-termination contractual obligations, such as providing a release, because of EnVen's prior material breach of the Employment Agreement. In support of this contention, EnVen argues that Dunwoody did not treat the Employment Agreement as terminated after EnVen's breach because, in their

10

view, he continued to abide by the Employment Agreement's non-competition provisions and returned EnVen's confidential information. EnVen makes this argument even though it recognizes the principle that "a party elects to continue the contract if it insists on performance by the party in default, seeks to benefit from the contract, or otherwise treats the contract as continuing." *See Koonce v. Barclays Capital Real Estate Inc.*, No. 01-10-00194-CV, 2011 WL 13385435, at *8 (Tex. App.—Houston [1st Dist.] Dec. 22, 2011, no pet.).

A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). When reviewing a directed verdict, an appellate court views the evidence in the light most favorable to the party against whom the verdict was rendered. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994). When reviewing a directed verdict on a legal issue, we consider all the evidence presented at trial, viewing it in the losing party's favor "as much as the record allows." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). We may consider any reason why the directed verdict should have been granted, even if not stated in the party's motion. *Industrial III, Inc. v. Burns*, No. 14-13-00383-CV, 2014 WL 4202495, at *8 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, pet. denied) (mem. op.).

In this case, the following events are undisputed. Dunwoody sent his notice of the existence of "Good Reason" under the terms of his Employment Agreement on May 9, 2019. This notice began the thirty-day period for EnVen to cure the problems pointed out in Dunwoody's notice. On June 6, 2019, EnVen sent a response letter to Dunwoody. EnVen notified Dunwoody that it did not believe "any Good Reason exists" and that there were "accordingly no issues requiring

11

cure." It also denied that it owed Dunwoody a Separation Amount under the Employment Agreement. EnVen continued that it had fully performed its obligations under the Employment Agreement and it believed Dunwoody remained bound by all restrictions surviving the termination of his employment. On June 7, 2019, Dunwoody filed suit against EnVen alleging that EnVen had breached and anticipatorily repudiated the Employment Agreement by failing to pay him "his Separation Payment and Pro-Rata Bonus, to vest his unvested incentive awards, or to provide any of the additional benefits owed upon [his] termination for Good Reason." On June 10, 2019, Dunwoody sent a letter to EnVen in which he asserted that EnVen had elected to treat his Employment Agreement "as terminated upon the expiration of the 30-day cure period following the Notice [of Good Reason], specifically June 8, 2019," and he concurred "that the Agreement terminated as of that date."

When a party to a contract commits a material breach of a contract, the non-breaching party must elect between two courses of action, either continuing performance or ceasing performance and filing suit for damages. *Gupta*, 140 S.W.3d at 756. EnVen points out no evidence in the record demonstrating that, after June 7, 2019, Dunwoody insisted EnVen perform the Employment Agreement, sought any benefits from the Employment Agreement, or in any manner treated the Employment Agreement as continuing. Instead, the undisputed evidence detailed above establishes that Dunwoody exercised the second option, he ceased performance and filed suit seeking damages caused by EnVen's breach. By exercising the second option, Dunwoody was excused from fully performing the Employment Agreement. *See id.* at 757, n. 7 ("The election affects only whether the non-breaching party itself is then required to perform fully."). We conclude the trial court did not err when it granted a directed verdict that Dunwoody was

12

excused from further performance of the terms of this Employment Agreement. We overrule the second argument raised in EnVen's second issue.

## IV. The final judgment signed by the trial court does not include excessive damages.

EnVen argues in its third issue that the damages awarded in the final judgment are excessive and Dunwoody received a windfall because the trial court "failed to subtract the costs Dunwoody avoided by escaping his ongoing Severance obligations." Specifically, EnVen argues Dunwoody's damages calculation was defective because it did not account for the "costs he avoided by terminating the [Employment] Agreement and avoiding future performance." The only avoided "costs" EnVen asserts Dunwoody avoided were (1) honoring his non-competition obligations, employment and investment, for one year after termination; (2) signing a release of noncontractual claims; and (3) returning company information and meeting the confidentiality requirements. Building on this argument, EnVen asserts that there was insufficient evidence supporting the award, there was charge error because the charge did not instruct the jury to account for avoided costs, and the damages awarded were excessive. As explained below, we disagree.

Because this is a breach of contract case, we are required to examine and apply the terms of the Employment Agreement. When construing a contract, we may not limit our review to only one part of the contract. Instead, when construing a written contract, our primary goal is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We construe contracts from a utilitarian standpoint, bearing in mind the

13

particular business activity sought to be served, and we avoid, when possible and proper, a construction that is unreasonable, inequitable, or oppressive. *Frost Nat'l Bank v. L & F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). We examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc.*, 128 S.W.3d at 229. Courts are not authorized to rewrite agreements to insert additional provisions the parties could have included, or to remove provisions that the parties, for whatever reason, would prefer to ignore. *Tenneco, Inc. v. Enterprise Prod. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). In other words, courts cannot make, or remake, contracts for the parties. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998).

Whether a contract is ambiguous is a question of law for the court to decide by examining the agreement as a whole in light of the circumstances present when the contract was entered. *Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase, N.A.*, 468 S.W.3d 200, 205 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A contract is unambiguous if it can be given one certain or definite legal interpretation. *Id.* The fact that the parties disagree about a contract's meaning does not necessarily show that it is ambiguous. *Id.* Also, lack of clarity does not create an ambiguity. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Additionally, parol evidence is not admissible for the purpose of creating an ambiguity. *Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). When a contract is not ambiguous, a court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Having reviewed the entire Employment Agreement, we conclude that Dunwoody's Employment Agreement is not ambiguous.

14

To recover on a breach-of-contract claim, a plaintiff must have sustained damages as a result of the defendant's breach. *West v. Triple B. Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Parkway Dental Assocs., PA v. Ho & Huang Props., LP*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). By operation of this rule, a party generally should be awarded neither less nor more than his actual damages. *Sharifi v. Sheen Automotive, LLC*, 370 S.W.3d 126, 148 (Tex. App.—Dallas 2012, no pet.). The facts of the case determine the proper measure of damages as well as any allowable offsets. *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 n.1 (Tex. 1984). The normal measure of damages for a breach of contract claim is expectancy or benefit-of-the-bargain measure. *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888 (Tex. App.—Dallas 2004, pet. denied). The purpose of this measure is to restore the injured party to the economic position he would have occupied had the contract been performed. *Id.* "The benefit of the bargain is measured by the prevailing party's anticipated receipts and losses caused by the breach less any cost or other loss he has avoided by not having to perform." *Id.* at 889. Dunwoody, as the plaintiff, had the burden of proving with some degree of certainty a factual basis to support the damages awarded. *Lakewood Pipe of Texas, Inc. v. Conveying Techniques, Inc.*, 814 S.W.2d 553, 556 (Tex. App.—Houston [1st Dist.] 1991, no writ).

We conclude that Dunwoody met this burden. Turning first to EnVen's list of Dunwoody's allegedly avoided costs, it was undisputed that Dunwoody did not compete with EnVen and did not bring any claims that would have been barred by the signing of the release. In addition, the jury found that Dunwoody complied

15

with the Employment Agreement's confidential information provision. As a result, there were no actual avoided costs or losses to be accounted for in Dunwoody's damages calculation or in the jury charge. *See Qaddura*, 141 S.W.3d at 889 (stating that benefit of the bargain damages are measured by the prevailing party's anticipated receipts and losses caused by the breach minus any cost or other loss actually avoided not any possible cost or loss that might have been avoided).

In addition, section 7(f) of the Employment Agreement prohibits Dunwoody's Severance from being reduced by EnVen's proposed hypothetically avoided costs. This section provides in its entirety:

> <u>No Duty to Mitigate.</u> [Dunwoody] shall not be required to mitigate the amount of any payment or benefit provided for in this [Employment] Agreement by seeking other employment or otherwise, nor, except as provided in the 18-Month Plan Participation Benefit or the 24-Month Plan Participation Benefit, shall the amount of any payment or benefit provided for in this [Employment] Agreement be reduced by any compensation or benefit earned by [Dunwoody] as a result of employment by another employer or self-employment, by any retirement benefits, or be offset against any amount claimed to be owing by [Dunwoody] to [EnVen], or otherwise.

This expansive contractual language the parties chose for their contract prevents the deduction of any real or hypothetical avoided costs from Dunwoody's Severance. *See Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 69 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (applying "Texas's fundamental public policy in favor of a broad freedom to contract, which allows parties to allocate risks as they see fit as long as their agreement does not violate the law or public policy."). To hold otherwise would ignore the language of the parties' contract and would not place Dunwoody in the same position he would have been in if the contract had been fully performed. *See id.* at 68–69 (stating that courts are not authorized to rewrite agreements even if one of the parties has come to dislike

one of its provisions).

Finally, as we explained above in section III of this opinion, Dunwoody was excused from any post-termination requirements because of EnVen's prior material breach of the Employment Agreement. Because Dunwoody was excused from these post-termination requirements, there were no costs avoided.

In summary, sufficient evidence supported the damages awarded by the jury and included in the final judgment, there was no charge error, and the damage award was not excessive. We overrule EnVen's third issue.

## V. EnVen has not shown that Dunwoody failed to establish Good Reason in its fourth issue on appeal.

In its fourth issue, EnVen makes multiple arguments that Dunwoody failed to establish Good Reason. We conclude none of EnVen's arguments have merit.

### A. Dunwoody adequately pled and disclosed his disparagement claim.

EnVen initially argues in its fourth issue that the trial court erred when it refused to disregard the jury's finding that EnVen breached the non-disparagement provision in Dunwoody's Employment Agreement because Dunwoody did not properly plead or disclose the claim. As a result, in EnVen's view, the final judgment does not conform to the pleadings as required by Rule 301 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 301 (stating that the "judgment of the court shall conform to the pleadings"). EnVen additionally argues that Dunwoody failed to properly disclose his disparagement claim as required by Rules 193 and 194 of the Rules of Civil Procedure. *See* Tex. R. Civ. P. 193, 194 (establishing requirement that parties respond to written discovery, provide a complete response, and disclose the legal theories and factual bases of that party's claims). As explained below, we disagree.

EnVen initially argues that Dunwoody failed to plead his disparagement claim because, in EnVen's view, Dunwoody buried the accusation within a different section of his amended pleading. Specifically, EnVen asserts that the following is insufficient to assert a disparagement claim:

> 28. **Mr. Weyel routinely criticized and disparaged Mr. Dunwoody to his co-workers and third parties.** The deliberate and sustained effort to squeeze Mr. Dunwoody out of the Company's affairs coincided with his discovery of behavior by EnVen's CEO that independently supported Mr. Dunwoody's Good Reason for terminating the [Employment] Agreement. These included unprovoked, physically aggressive verbal attacks by Mr. Weyel, at times while he was visibly impaired by alcohol. These attacks were witnessed by other company executives as well as by third parties with whom the Company maintained business relationships, and they occurred both inside and out of EnVen's offices. Mr. Weyel's belligerent conduct created a toxic and unprofessional environment within EnVen's management which rendered it impossible for Mr. Dunwoody to remain at the Company. In fact, Mr. Dunwoody operated in constant anxiety of this behavior, further effecting [sic] his ability to do his job. Mr. Dunwoody has also learned that Mr. Weyel routinely emailed his colleagues and even third parties behind his back to make false and disparaging comments about Mr. Dunwoody's work performance or ability. Mr. Weyel's verbal attacks and disparagement of Mr. Dunwoody not only served to undermine and materially diminish Mr. Dunwoody's authority, but it also violated the non-disparagement covenant in Mr. Dunwoody's Employment Agreement (the breach of which serves as an independent basis for Mr. Dunwoody's Good Reasons for resignation).

We disagree this detailed paragraph describing Weyel's disparagement of Dunwoody, which ended by plainly stating that it served as an independent basis for Dunwoody's Good Reasons for resignation, constitutes inadequate notice. *See* Tex. R. Civ. P. 47(a) (stating that a pleading "sets forth a claim for relief" if it contains "a short statement of the cause of action sufficient to give fair notice of the claim involved"). EnVen did not specially except to Dunwoody's Third

18

Amended Petition. *See* Tex. R. Civ. P. 91 (stating that a special exception is used to "point out any defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to."). As a result, we liberally construe Dunwoody's amended petition to determine whether he adequately pleaded his disparagement claim. *See Zarate v. Rodriguez*, 542 S.W.3d 26, 36 n.4 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). We conclude that, based on the very specific paragraph 28 quoted above, Dunwoody did.

We turn next to EnVen's argument that Dunwoody failed to adequately disclose his disparagement claim as required by Rule 194 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 194(b)(3). Dunwoody served his amended disclosure responses on November 20, 2020, approximately six months before trial. In response to the requirement that he disclose the legal theories and provide a summary of the factual basis of his claims, Dunwoody began by incorporating by reference his Third Amended Original Petition. We conclude this was sufficient to provide fair notice to EnVen of Dunwoody's addition of disparagement as a Good Reason for his departure from EnVen. *See* Tex. R. Civ. P. 59 (permitting incorporation by reference into pleadings); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding) ("The primary objective of discovery is to ensure that lawsuits are decided by what the facts reveal, not what facts are concealed.") (internal quotations omitted).

### B. Dunwoody substantially complied with the notice requirement found in Section 7(i) of this Employment Agreement.

In the next part of its Fourth Issue EnVen argues that Dunwoody failed to provide the thirty-day notice of his disparagement claim as required by his Employment Agreement. This issue was raised pre-trial when Dunwoody filed a motion for partial summary judgment in part on the issue of contractual notice.

The motion was filed ten days after Dunwoody filed his Third Amended Petition. In his motion Dunwoody argued that he had complied with the Good Reason reasonable notice requirements found in section 7(i) of his Employment Agreement. EnVen did not respond to the motion. The trial court subsequently granted the motion in part, concluding that "prior to terminating his employment, Plaintiff David M. Dunwoody, Jr. complied with and satisfied the notice and cure requirements contained in Section 7(i) of the Employment Agreement."

EnVen sought to revisit the contractual notice issue during trial. The trial court reaffirmed its partial summary judgment and declined to allow EnVen to introduce evidence on the notice issue during the trial. On appeal, EnVen does not directly challenge the trial court's partial summary judgment but instead argues the trial court's partial summary judgment order was too narrow to cover Dunwoody's disparagement claim. It then revives its notice argument asserting that "notice was a live issue, and the record is clear (and uncontroverted) that Dunwoody did not provide notice of this claim." We disagree with both of EnVen's arguments.

Section 7(i) of Dunwoody's Employment Agreement required Dunwoody to provide EnVen with "reasonable notice" detailing the existence of his Good Reason for terminating his employment. Dunwoody was further required to give EnVen thirty days to cure those issues. It is undisputed that Dunwoody sent a Good Reason notice letter on May 9, 2019. In his letter Dunwoody detailed his contentions that EnVen had provided Good Reason by decreasing his equity compensation and by reducing his authority as president. Dunwoody also included a final paragraph in the letter titled "Other Actions to Consider." This paragraph provides:

> I believe these points are more than sufficient to constitute Good Reason for termination as they relate to my Employment Agreement. With that said, they are not an exhaustive list of my concerns

regarding the direction and management of the Company, which I am willing to expand upon in a confidential setting should the board desire additional information. Among other concerns, I am aware of questionable instances of expense reimbursement by an executive and I have concerns regarding aspects of the Company's budgetary approval process. Additionally, while there are other actions that have been taken against me that would further substantiate the occurrence of Good Reason under, and breach of, my employment agreement, I believe the documentation of these additional actions would not be in the interest of all parties involved.

EnVen rejected Dunwoody's notice less than thirty days later. In the rejection letter EnVen refused to acknowledge the existence of any Good Reason, made no effort to respond to every point raised in Dunwoody's letter, asserted there was nothing to cure, and notified Dunwoody that it would not pay Dunwoody any Severance as defined in Dunwoody's Employment Agreement.

We conclude that Dunwoody's Good Reason notice letter provided EnVen with "reasonable notice" that he believed multiple Good Reasons existed for him to terminate his contract and receive Severance. Dunwoody also offered to provide more detailed information in a confidential setting, which EnVen declined. The fact EnVen chose not to accept the opportunity to learn more details does not eliminate the fact it received written notice that Dunwoody believed Good Reason existed. That was sufficient. *See James Constr. Group, LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 396 (Tex. 2022) (stating that Texas law generally recognizes that "a party's substantial compliance with contractual notice conditions is sufficient to satisfy those conditions"). Finally, the trial court's partial summary judgment order, quoted above, was broad enough to cover all of Dunwoody's claims. We overrule this part of EnVen's fourth issue.

### C. EnVen was not entitled to re-litigate during trial an issue resolved by summary judgment.

Next, EnVen alternatively argues that the trial court "improperly forbade EnVen from pursuing its [lack of notice] defense." In making this argument, EnVen does not substantively challenge the trial court's partial summary judgment. It instead simply argues that the trial court should have allowed EnVen to amend its answer, introduce evidence on the notice issue, and submit the notice issue to the jury. We again disagree.

EnVen asserts that the trial court erred when it denied EnVen's request to advance a claim at trial that was already decided as a matter of law through a partial summary judgment. The answer is clear that the trial court committed no error when it refused to allow EnVen to pursue the contractual notice issue during trial because that question had been resolved through a summary judgment. *See Robles v. Consol. Graphics, Inc.*, 965 S.W.2d 552, 558 n.5 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) ("Because the court had already decided the issue of illegal double commissions in the first summary judgment dealing with Robles's claims, that issue was not before the court in the second summary judgment and the trial court properly refused to consider it."); *Martin v. First Republic Bank, Fort Worth*, 799 S.W.2d 482, 488 (Tex. App.—Fort Worth 1990, writ denied) ("The issues determined on a motion for summary judgment are final, although the judgment is interlocutory."). We overrule this part of EnVen's fourth issue.

### D.    The trial court did not misinterpret Section 7(i)(ii) of Dunwoody's Employment Agreement.

EnVen next argues that the trial court reversibly erred because it misinterpreted Section 7(i)(ii) of Dunwoody's Employment Agreement. We again disagree.

This argument requires this Court to interpret Dunwoody's Employment Agreement. We apply the same standard set out in section IV above. We have

22

already determined that the Employment Agreement is not ambiguous. In this situation, it is the trial court, not the jury, which construes the contract. *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157.

Section 7(i)(ii) provides Dunwoody had Good Reason to resign if, without Dunwoody's written consent, EnVen failed

> to continue in effect any plan in which Executive participates that is material to Executive's total compensation, unless an equitable arrangement (embodied in an ongoing substitute or alternative plan) has been made with respect to such plan or the failure by the Company to continue Executive's participation therein (or in such substitute or alternative plan) on a basis not materially less favorable to Executive, unless such failure to continue in effect any such failure to continue in effect any plan or participation relates to a discontinuance of such plans or participation on a management-wide or Company-wide basis . . . .

Throughout most of the pre-trial proceedings of this case EnVen took the position that the Employment Agreement was not ambiguous. Then, a short time before the trial commenced, EnVen shifted its position. The trial court rejected EnVen's ambiguity argument and construed the Employment Agreement as a matter of law. The trial court included the following question and instructions in the jury charge:

> Did EnVen fail to continue Dunwoody's participation in an equity compensation plan "on a basis not materially less favorable" to Dunwoody, as that phrase is used in Section 7(i)(ii) of the Employment Agreement?
>
> Answer "Yes" to this question if you find that EnVen materially reduced Dunwoody's share of the management equity award year over year.
>
> Material means a reasonable person would attach importance to the fact or a change of condition in the context of the total mix of information relevant to such fact of change of condition.

The jury answered "Yes." The jury also found that Dunwoody did not provide written consent to a reduction in his equity award.

In EnVen's view, the trial court erred when it interpreted Dunwoody's Employment Agreement in this way and then excluded evidence not relevant to this interpretation. EnVen continues that the jury was asked the wrong question as a result, the trial court should have submitted the meaning of the Employment Agreement to the jury, and there was legally insufficient evidence to support the verdict under a proper interpretation of Section 7(i)(ii).

EnVen's board adopted the 2015 Plan when EnVen converted to a corporation. The 2015 Plan created a reserve of shares to award various employees. In 2015, EnVen issued "37.5% of the amount of the Reserve" and the issued shares were divided among the three top EnVen executives. Weyel received 46 percent, Dunwoody 31 percent, and Carmony 23 percent. The 2015 Plan was never changed or discontinued.

Turning to the key terms used in Section 7(i)(ii), "basis" is defined as "foundation" or "base." *Merriam-Webster Dictionary New Edition* 58 (2004). The same dictionary defines "Participation" as "take part in something" or "share." *Id.* at 525. It also defines "Continue" as "to maintain without interruption." *Id.* at 157. We conclude that the plain language of section 7(i)(ii) of Dunwoody's Employment Agreement protects Dunwoody's right over time to take part in EnVen's 2015 Plan at a base level not materially less favorable to Dunwoody. In other words, the 2015 Plan established the basis for Dunwoody's participation in EnVen's equity plan and Dunwoody's relative share, as compared to the other top executives, could not be reduced in future years. We conclude that the trial court did not err when it determined the only way to measure EnVen's compliance with

24

Section 7(i)(ii) was by a year over year comparison of Dunwoody's share of the equity awards.

EnVen's reference to Section 5(a) of Dunwoody's Employment Agreement does not change our analysis because it can be harmonized with Section 7(i)(ii). *See J.M. Davidson, Inc.*, 128 S.W.3d at 229. Section 5(a) guarantees Dunwoody's initial right to participate in EnVen's equity compensation plan and other benefits "on a basis at least as favorable to [Dunwoody] as may be provided to similarly situated [EnVen] senior executives . . . ." Section 7(i)(ii) establishes when Dunwoody has Good Reason to resign based on EnVen's handling of the equity compensation plan. EnVen argues that Section 5(a) and Section 7(i)(ii), by both using the word "Basis," established only that the methodology used for Dunwoody's equity award would be the same as the methodology used for the other top EnVen executives. If we were to adopt EnVen's proffered interpretation, which would measure EnVen's compliance with the Employment Agreement by comparing Dunwoody's equity award against other executives' awards in a single year, we would eliminate the Employment Agreement's use of the word "continue" in Section 7(i)(ii). This we cannot do. *See Hand & Wrist Center of Houston, P.A. v. Lowery Masonry, LLC*, No. 14-19-00539-CV, 2020 WL 7626179, at *4 (Tex. App.—Houston [14th Dist.] Dec. 22, 2020, no pet.) (mem. op.) (stating that eliminating words from a contract "is not reasonable"). By using the word "continue," the Employment Agreement established a temporal aspect to the required comparison which dictates a comparison of Dunwoody's share of the equity awards over time. The fact EnVen now dislikes the Employment Agreement's language does not authorize this court to rewrite the contract in the guise of interpreting it. *See Bennett*, 489 S.W.3d at 70. Finally, interpreting Dunwoody's Employment Agreement to require a comparison of Dunwoody's

share of the equity award over time rather than using some other method, such as total value or the same methodology as other executives in a single year, is not an absurd result. *See Lawrence v. CBD Services, Inc.*, 44 S.W.3d 544, 553 (Tex. 2001) (recognizing Texas's strong public policy in favor of preserving freedom of contract); *Wal-Mart Stores Texas LLC v. Shirey*, No. 14-18-00545-CV, 2020 WL 548323, at *5 (Tex. App.—Houston [14th Dist.] Feb. 4, 2020, pet. denied) (mem. op.) ("We bear in mind Texas's fundamental public policy in favor of a broad freedom of contract, which allows parties to allocate risks as they see fit as long as their agreement does not violate the law or public policy."). We overrule this part of EnVen's fourth issue. Because we have determined that the trial court did not misinterpret Dunwoody's Employment Agreement, we need not reach the next part of EnVen's fourth issue arguing that the trial court's misinterpretation led to other errors.

### E.     The exception found in Section 7(i)(ii) does not apply.

EnVen next argues that the trial court erred when it failed to apply the exception found in Section 7(i)(ii) which provides that Good Reason does not exist if EnVen "fails to continue" Dunwoody's participation in the equity award plan because the "failure to continue in effect any plan or participation relates to a discontinuance of such plans or participation on a management-wide or Company-wide basis." In EnVen's view, EnVen discontinued participation in the 2015 plan in 2016 when no equity compensation awards were made. EnVen also asserts that it then "adopted a market-based compensation plan for all executives" in 2017 and distributed the equity awards under that new plan in 2017, 2018, and 2019.

The record evidence does not support EnVen's argument. EnVen's own witnesses, CEO Weyel and general counsel Jeff Starzec, testified that the 2015

Equity Award Plan was never discontinued and remained in place at the time of trial. Because the evidence was undisputed that the 2015 Plan was never discontinued, the trial court did not err when it ruled as a matter of law that the exception found in Section 7(i)(ii) was inapplicable and should not go to the jury. The undisputed fact that EnVen did not distribute any equity awards in 2016 is simply not relevant because Dunwoody did not allege Good Reason arose in 2016, only in 2017, 2018, and 2019. We overrule this part of EnVen's fourth issue.

### F. Legally sufficient evidence supports the jury's finding that Dunwoody did not consent to the reductions of his equity awards in 2017, 2018, and 2019.

Finally, in the last part of EnVen's fourth issue, EnVen argues there is no evidence supporting the jury's finding that Dunwoody did not provide written consent to the reductions in his equity awards in 2017, 2018, and 2019. Even if we assume for purposes of appeal that Dunwoody bore the burden to prove that he did not consent to the changes in his equity awards, there is more than a scintilla of evidence supporting the jury's finding that Dunwoody did not consent.

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.— Houston [14th Dist.] 2013, no pet.). In conducting a legal-sufficiency review, we must consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *Id.* at 550–51 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005)). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* at 551. This Court must credit favorable evidence if a

reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.*

This Court may sustain a legal sufficiency (or no-evidence) issue only if the record reveals one of the following: (1) the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.* Evidence that is so weak as to do no more than create a mere surmise or suspicion that the fact exists is less than a scintilla. *Id.*

The plain language of Dunwoody's Employment Agreement provides that the occurrence of any of the events specified in Section 7(i) would not constitute "Good Reason" if Dunwoody gave "written consent." The documents relevant to whether Dunwoody gave his "written consent" are the Restricted Stock Unit Grant Notices Dunwoody signed in 2017, 2018, and 2019. Each Notice disclosed only the exact number of shares granted to Dunwoody. The Notices did not inform Dunwoody of the total number of shares issued, the distribution of those shares among EnVen's top executives, or the assumed value of the shares. Because the Notices did not contain this type of information, we conclude that more than a scintilla of evidence supports the jury's finding that Dunwoody did not give written consent to a material reduction in his share of the management equity award. *See Ford v. Culbertson*, 308 S.W.2d 855, 865 (Tex. 1958) (explaining that waiver "occurs where one in possession of any right whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure of forbearance to do which is inconsistent with the right or his intention to rely upon it"); *Shannon v. Memorial*

28

*Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 627 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that former employee did not expressly waive her rights under a confidentiality and anti-disparagement agreement with her former employer when she signed an authorization permitting former employers to provide full details concerning her past employment). We overrule this final part of EnVen's fourth issue.

## CONCLUSION

Having overruled all of the issues raised by EnVen in this appeal, we affirm the trial court's judgment.

/s/ Jerry Zimmerer
Justice

Panel consists of Justices Zimmerer, Hassan, and Poissant.

29